[No. 17452-9-II.   Division Two.   November 1, 1995.]

JOHN MATSON, ET AL., *Appellants*, v. CLARK COUNTY BOARD OF COMMISSIONERS, ET AL., *Respondents*.

642

*Richard M. Stephens*, for appellants.

*Arthur D. Curtis, Prosecuting Attorney*, and *Richard S. Lowry, Deputy*, for respondents.

FLEISHER, J. — Landowners challenged the Clark County Board of County Commissioners' (the Board) enactment of two emergency zoning ordinances, arguing lack of public notice and hearings, violation of the Growth Management Act, and violation of due process. The trial court ruled that the Board's actions were authorized by statute, and the landowners appeal. We affirm.

## FACTS

On April 19, 1993, the Board enacted two emergency ordinances after the conclusion of a public hearing on other matters. The first ordinance, 1993-04-13, temporarily banned new cluster subdivisions in agricultural and forest zoning districts for six months. The second ordinance, 1993-04-15, repealed for six months the existing exemption from plat review for large lot (five to twenty acre) subdivisions. Two days later, the Board readopted these ordinances during a regular board meeting. The ordinances were readopted to remedy any possible noncompliance with the Open Public Meetings Act of 1971, RCW 42.30, although none is alleged by the appellants.

In adopting the ban on new cluster subdivisions, the Board found that such developments in agricultural and forest areas were incompatible with growth management or agricultural and forest operations, and that these developments caused adverse impacts on schools and fire protection. In repealing the plat review exemption for large lot subdivisions, the Board found that such subdivisions fail to provide for adequate road networks and present risks to the environment. Emergency adoption of these ordinances was necessary, according to the Board, because during the normal adoption period property owners would propose developments and obtain vested rights, thereby undermining the effectiveness of the regulations.

John Matson, the League of Private Property Voters, and others (Matson) filed this suit on May 17, 1993, seeking judicial review of the ordinances. Meanwhile, the Board held a duly advertised public hearing on the ordinances on June 15, 1993. After this hearing and the adoption of further findings of fact, the Board reconfirmed the moratorium on cluster subdivisions and the interim ordinance on large lot subdivisions. The trial court subsequently ruled in favor of the Board, and Matson appeals.

## ANALYSIS

### 1. Moratoriums on Development Under RCW 35.63.200

Matson first argues that the Board lacked the authority to adopt emergency ordinances and moratoriums without public notice and hearings. He maintains that RCW 35.63.200, the statute relied upon by the Board, does not grant the Board the authority to change zoning regulations without notice. Instead, he argues that this statute merely imposes limitations on the enactment of moratoriums and interim zoning controls by those governmental bodies that otherwise have authority for such actions. Matson does not allege that the Board failed to comply with this statute in adopting the ordinances.

Moratoriums and interim zoning are generally recognized techniques designed to preserve the status quo so that new plans and regulations will not be rendered moot by intervening development. Richard L. Settle, *Washington Land Use and Environmental Law and Practice*, § 2.13, at 72 (ed. 1983). Recognizing the emergency, temporary, and expedient nature of such regulations, the courts have tended to be more deferential than usual to the local legislative body. Settle § 2.13, at 73.

Washington's first planning enabling legislation, the planning commissions act, RCW 35.63.010 et seq., permits counties and cities to plan and regulate land use with little constraint. Settle § 1.3, at 4. The State also adopted a second county enabling act, the county Planning En-

abling Act, RCW 36.70.010 et seq. However, RCW 36.70.940 expressly permits counties the alternative of operating under the prior planning commissions act, RCW 35.63. In the present case, Clark County elected to operate its zoning controls under RCW 35.63 rather than RCW 36.70. Accordingly, the statutory provisions contained in RCW 35.63 control the resolution of this case.

The trial court held that RCW 35.63.200 permits the county to enact moratoriums and interim zoning controls without notice and public hearings. This statute provides that:

> A council or board that adopts a moratorium or interim zoning control, without holding a public hearing on the proposed moratorium or interim zoning control, shall hold a public hearing on the adopted moratorium or interim zoning control within at least sixty days of its adoption, whether or not the council or board received a recommendation on the matter from the commission. If the council or board does not adopt findings of fact justifying its action before this hearing, then the council or board shall do so immediately after this public hearing. *A moratorium or interim zoning control adopted under this section* may be effective for not longer than six months, but may be effective for up to one year if a work plan is developed for related studies providing for such a longer period. A moratorium or interim zoning control may be renewed for one or more six-month periods if a subsequent public hearing is held and findings of fact are made prior to each renewal.

RCW 35.63.200 (emphasis added).

■ ■ We construe statutes so that no clause, sentence, or word is superfluous, void, or insignificant. *Washington Economic Dev. Fin. Auth. v. Grimm*, 119 Wn.2d 738, 746, 837 P.2d 606 (1992). In this case, RCW 35.63.200 states, "A moratorium or interim zoning control *adopted under this section* may be effective for not longer than six months . . . ." RCW 35.63.200 (emphasis added). The emphasized language authorizes the enactment of a moratorium or interim zoning control by the Board. Furthermore, no

other language contained in the planning commissions act, RCW 35.63, serves to authorize counties to enact moratoriums and interim zoning controls. Thus, Matson's argument that RCW 35.63.200 only imposes limitations on the enactment of interim zoning controls is not supported by the act and would render the emphasized language superfluous. Accordingly, we hold that the trial court did not err in finding that RCW 35.63.200 authorizes counties to enact these controls.

2. Interim Zoning Under the Growth Management Act

Matson then argues that the adoption of these ordinances violates the Growth Management Act (GMA), RCW 36.70A.010 et seq. He maintains that, under RCW 36.70A.060(1), counties are required to adopt development regulations by September 1991, and that once this date has passed, counties are prohibited from imposing any new regulations on resource land.

■ Matson's argument is without merit. RCW 36.70A.390 specifically authorizes interim zoning controls and moratoriums under the GMA. These actions may be conducted without public notice or hearings. RCW 36.70A.390. If interim zoning regulations could not be enacted after September 1991, as Matson argues, this entire statutory section would be superfluous and, thus we refuse to adopt his argument. *Grimm*, 119 Wn.2d at 746.

■ Matson then argues that RCW 36A.70.390 prohibits the imposition of moratoriums on resource lands. This argument is based on an erroneous interpretation of the second paragraph of the statute. The relevant paragraph states:

> This section [RCW 36.70A.390] does not apply to the designation of critical areas, agricultural lands, forest lands, and mineral resource lands, under RCW 36.70A.170, and the conservation of these lands and protection of these areas under RCW 36.70A.060, prior to such actions being taken in a comprehensive plan adopted under RCW 36.70A.070 and implementing development regulations adopted under RCW 36.70A.120, if a public hearing is held on such proposed actions.

RCW 36.70A.390. This language provides that the statute does not apply to governmental GMA actions conducted under RCW 36.70A.060 and .170 involving resource lands if a public hearing is held. RCW 36.70A.390. Thus, it is not that moratoriums and interim zoning controls cannot be imposed on resource lands, but rather that actions involving resource lands under RCW 36.70A.060 and .170 are not considered to be moratoriums or interim zoning controls for the purposes of RCW 36.70A.390. Accordingly, the trial court did not err in holding that the actions of the Board did not violate the Growth Management Act.

3.  Restrictions on Obtaining Vested Rights To Use Property

Matson then argues that the ordinances constitute an unconstitutional obstruction on the ability to obtain vested property rights. Division One of this court, however, previously addressed a vested rights challenge to interim zoning in *Jablinske v. Snohomish County*, 28 Wn. App. 848, 626 P.2d 543 (1981). The *Jablinske* court found that, although RCW 36.70.790 authorized counties to enact emergency zoning measures, the statute did not specifically require notice and public hearing prior to the enactment of the measures. 28 Wn. App. at 851 n.1.[1] The court then held that the Planning Enabling Act's hearing and notice requirements did not apply to emergency ordinances enacted pursuant to RCW 36.70.790. *Jablinske*, 28 Wn. App. at 851. The court reasoned that if such requirements were applied to interim zoning decisions, developers could frustrate effective long-term planning by obtaining vested rights to develop their property, thereby rendering the emergency plans moot. *Jablinske*, 28 Wn. App. at 851. This potential to frustrate long-term planning is of particular concern in a state such as Washington where vesting occurs upon application for a building permit. *Jablinske*,

---

[1] The Legislature subsequently amended the Planning Enabling Act, RCW 36.70, to place a six-month renewable time limit and other conditions on moratoriums. RCW 36.70.395. The language of this statute is virtually identical to and was adopted as part of the same act as RCW 35.63.200, the statute being challenged in the present case. Laws of 1992, ch. 207.

28 Wn. App. at 851. Professor Settle supports the *Jablinske* court's conclusion, noting that "[i]f interim zoning is to serve its purpose in a state with a permissive vested rights doctrine, it must not be subject to time-consuming notice and hearing requirements applicable to ordinary zoning." Settle § 2.13, at 73.

■ Although the *Jablinske* court addressed a different planning enabling act, we find the reasoning of both the court and Professor Settle persuasive. Furthermore, unlike in *Jablinske*, the Legislature in this case specifically imposed six-month renewable time limits, postenactment hearing requirements, and other restrictions on moratoriums under RCW 35.63.200. Accordingly, we hold that the adoption of interim zoning controls and moratoriums under RCW 35.63.200 does not violate the vested rights doctrine.

■ To support his argument that the ordinances infringe on the ability to vest rights, Matson cites *West Main Assocs. v. City of Bellevue*, 106 Wn.2d 47, 720 P.2d 782 (1986). But, *West Main* is distinguishable from the present situation. In *West Main*, the City of Bellevue enacted an ordinance denying developers the ability to vest rights until after a series of permits were obtained. *West Main*, 106 Wn.2d at 52-53. The court held that because the city delayed the vesting point until well after a developer applied for approval of a project, and reserved the ability to change its ordinances in response to a developer's proposal, the challenged ordinance was unconstitutional. *West Main*, 106 Wn.2d at 53. The ordinance violated the vested rights doctrine and the right to develop property free of the "fluctuating policy" of legislative bodies. *West Main*, 106 Wn.2d at 53. The *West Main* decision, however, did not involve moratoriums on new development or prospectively applied interim zoning controls. Furthermore, the ordinances in this case do not alter the vesting point of an application or reserve the ability to change the rules in response to a developer's application. Read together *Jablinske* and *West Main* hold: although

the county may not change the rules applicable to an already submitted application, the county may enact a moratorium on new applications; and in changing zoning rules, the county may enact emergency rules without public hearing to prevent subsequent development applications from rendering the changes moot.

4. Judicial Review of the Board's Determination of an Emergency

■■ Finally, Matson argues that the trial court erred in deferring to the Board's determination that an emergency existed, rather than making an independent determination. Courts may conduct only a very limited review of a legislative declaration of an emergency. *Federal Way v. King County*, 62 Wn. App. 530, 536, 815 P.2d 790 (1991). A legislative declaration "is conclusive and must be given effect unless it is on its face 'obviously false and a palpable attempt at dissimulation.'" *Federal Way*, 62 Wn. App. at 536 (quoting *In re McNeill*, 113 Wn.2d 302, 307, 778 P.2d 524 (1989)). To determine the truth or falsity of the declaration of an emergency, the court will not inquire into the facts, but rather must consider only what appears upon the face of the act and its judicial knowledge. *Federal Way*, 62 Wn. App. at 536. The *Federal Way* court, therefore, found that courts are prohibited from considering the record below and are limited to examining the face of the ordinance and considering facts that may be judicially noticed. *Federal Way*, 62 Wn. App. at 536. However, the ordinance must include a statement of the underlying emergent facts. *Federal Way*, 62 Wn. App. at 543. Without such a statement, an emergency declaration is invalid. *Federal Way*, 62 Wn. App. at 536.

The case of *Swartout v. Spokane*, 21 Wn. App. 665, 586 P.2d 135 (1978), *review denied*, 91 Wn.2d 1023 (1979), cited by Matson in support of his position, is consistent with this standard. In *Swartout*, the statement of emergency was conclusionary in nature; merely stating that an emergency existed. *Swartout*, 21 Wn. App. at 671. The court noted that the ordinance did not contain any facts to

justify the emergency and, therefore, the court invalidated the ordinance. *Swartout*, 21 Wn. App. at 672-73.

In this case, however, the ordinances in question are not conclusionary in nature; they contain facts which support the Board's determination that an emergency existed. First, in adopting the moratorium on new cluster subdivisions, the Board found that such clusters in agricultural and forest areas were not compatible with growth management or agricultural and forest operations. These developments used valuable farm and forest land for home sites, leaving the less valuable land vacant. Furthermore, the density of these developments caused adverse impacts on schools and fire protection. Finally, the Board noted that a moratorium was necessary to prevent further developments in anticipation of proposed zoning changes. These findings were further amplified in a staff memorandum incorporated into the ordinance. Accordingly, sufficient facts are present on the face of the cluster development ordinance to justify the conclusion of an emergency.

Second, in repealing the plat review exemption for large lot subdivisions, the Board found that such subdivisions fail to provide for adequate road networks and in some cases may block future arterial routes. Sewage disposal and drainage systems may be inadequate to support future construction of these subdivisions, and proper fire protection could not be assured. Finally, emergency action was necessary because of the acceleration in growth of such subdivisions and because property owners would propose further developments prior to the enactment of any new regulations, thereby undermining the effectiveness of the regulations. Accordingly, sufficient facts are present on the face of the large lot subdivision ordinance to justify the conclusion of an emergency. The trial court, therefore, did not err in refusing to inquire into the facts supporting these two emergency ordinances.

Affirmed.

BRIDGEWATER and WIGGINS, JJ., concur.