

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| SLEEPING TIGER, LLC, a Washington limited liability company, )<br>)<br>) | No. 68045-5-I |
| ) | DIVISION ONE |
| Petitioner, )<br>) | |
| v. )<br>) | |
| CITY OF TUKWILA, a Washington municipal corporation, )<br>) | UNPUBLISHED OPINION |
| )<br>Respondent. ) | FILED: February 25, 2013 |

SPEARMAN, A.C.J. — Downtown Emergency Service Center sought to locate a "crisis diversion facility" in a hotel owned by Sleeping Tiger, LLC in the City of Tukwila. In response, the City enacted a moratorium on permit applications for "essential public facilities," a zoning designation that includes crisis diversion facilities. The City then rezoned where crisis diversion facilities could be located within Tukwila, and the rezoning ordinance excluded such facilities from the zone where Sleeping Tiger's hotel was located.

Sleeping Tiger challenged the zoning ordinance with the Growth Management Hearing Board, and prevailed on most issues. The City appealed to the superior court, which reversed the Board. We affirm the superior court, holding that the Board erroneously interpreted or applied the law, that it failed to follow prescribed procedures, and that its conclusions are not supported by substantial evidence in the record.

FACTS

The Growth Management Act (GMA) requires cities to include in their comprehensive plans "a process for identifying and siting essential public facilities," which it defines as "those facilities that are typically difficult to site,"

> such as airports, . . . correctional facilities, solid waste handling facilities, and inpatient facilities including substance abuse facilities, mental health facilities, group homes, and secure community transition facilities as defined in RCW 71.09.020.

RCW 36.70A.200(1). The City of Tukwila comprehensive plan includes a process for siting essential public facilities within its borders. Specifically, the comprehensive plan makes siting of essential public facilities subject to the issuance of an "unclassified use permit." Certified Appeals Board Record (CABR) at 1151. Before enactment of the ordinance at issue in this case, the City's zoning code permitted essential public facilities anywhere in Tukwila's commercial and industrial zoning districts, including an area designated the Manufacturing Industrial Center (MIC) zone.

In 2009, King County solicited bids from qualified operators to establish "crisis diversion facilities" in southern King County. These facilities provide a physical location for police and other first responders to transport individuals suffering from mental health and chemical dependency problems, as an alternative to the criminal justice system. The parties do not dispute that crisis diversion facilities are a type of essential public facility under the GMA.

2

Sleeping Tiger owns a hotel called RiverSide Residences (RiverSide) located in Tukwila's MIC zone. Downtown Emergency Service Center (DESC), a provider of homeless services, sought to respond to King County's bid solicitation, and identified Sleeping Tiger's hotel as a potential location for a crisis diversion facility. In September 2009, DESC approached the City of Tukwila to inquire about the process for siting a crisis diversion facility at RiverSide. After City planners realized DESC's proposed crisis diversion facility was an essential public facility under the GMA, the City enacted Ordinance No. 2248, a six-month moratorium on applications for crisis diversion facilities anywhere in the City. The City undertook a study to understand the nature of such facilities and to propose development regulations.

DESC filed a petition for review with the Central Puget Sound Growth Management Hearings Board (Board) challenging the moratorium ordinance as improperly precluding the siting of an essential public facility. The City enacted a second moratorium, under Ordinance No. 2277, this time putting a halt on applications for any change of use for non-industrial uses in the MIC zone. DESC also challenged this ordinance. Sleeping Tiger did not challenge either moratorium ordinance.

On May 17, 2010, the City enacted Ordinance No. 2287, which changed the zones in which crisis diversion facilities could be located. The ordinance allowed crisis diversion facilities in a portion of Tukwila's Commercial/Light Industrial (C/LI) District, but not in the MIC zone. DESC voluntarily dismissed its appeals of the moratorium ordinances after it located a site in Seattle for the crisis diversion facilities. Id. Sleeping

3

Tiger filed a petition for review with the Board challenging Ordinance No. 2287, alleging the zoning changes precluded essential public facilities in violation of the GMA:

> [T]he preclusive effect of Tukwila's actions, starting with its moratorium and culminating in the enactment of Ordinance No. 2287, has been uncontrovertibly established by DESC's decision to discontinue its efforts to locate the facilities in Tukwila.

Id. at 1153.

The Board sided with Sleeping Tiger, concluding that (1) the City "did not comply with the RCW 36.70A.200(1) requirement of 'a process for identifying and siting' EPFs" (CABR at 1161); (2) the City "**failed to comply** with RCW 36.70A.200(5) by adopting restrictive zoning that precluded the siting of crisis diversion facilities . . ." (Id. at 1166); and (3) "the City's action was **not guided by** and, in fact, **substantially interferes** with GMA Goal 7 – Permits." (Id. at 1169). The Board invalidated Ordinance No. 2287 under RCW 36.70A.302(1), which empowers the Board to invalidate a development regulation that would "substantially interfere with the fulfillment of the goals" of the GMA.

The City petitioned the superior court for judicial review of the Board's decision. The superior court granted the City's petition, reversing and setting aside the Board's final decision and order. Sleeping Tiger appeals.

<u>DISCUSSION</u>

<u>Standard of Review</u>. "The Board is charged with adjudicating GMA compliance, and, when necessary, with invalidating noncompliant comprehensive plans and development regulations." <u>King County v. Central Puget Sound Growth Mgmt. Hrgs. Bd.</u>, 142 Wn.2d 543, 552, 14 P.3d 133 (2000) (citing RCW 36.70A.280, .302). "The

board 'shall find compliance unless it determines that the action by the state agency, county, or city is clearly erroneous in view of the entire record before the board and in light of the goals and requirements of [the GMA].'" Id. (quoting RCW 36.70A.320(3)). "To find an action 'clearly erroneous,' the Board must be 'left with the firm and definite conviction that a mistake has been committed.'" Id. (quoting Dep't of Ecology v. Pub. Util. Dist. No. 1, 121 Wn.2d 179, 201, 849 P.2d 646 (1993)).

A party aggrieved by a final Board decision may appeal the decision to superior court as provided in chapter 34.05 RCW, the Administrative Procedure Act (APA). Id. (citing RCW 36.70A.300(5)). "In judicial review under the APA, '"[t]he burden of demonstrating the invalidity of agency action is on the party asserting invalidity.'" Id. (quoting RCW 34.05.570(1)(a)). Relief will be granted to an aggrieved party only if the reviewing court determines that one of the nine standards enumerated in RCW 34.05.570(3) applies. Those standards include the following:

> (c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure;
>
> (d) The agency has erroneously interpreted or applied the law;
>
> (e) The order is not supported by evidence that is substantial when viewed in the light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;

RCW 34.05.570(3).

"On appeal, this court reviews the Board's decision, not the decision of the superior court, and 'judicial review of the Board's decision is based on the record made before the Board.'" King County v. Cent. Growth Mgmt, 142 Wn.2d at 553 (quoting

Buechel v. Dep't of Ecology, 125 Wn.2d 196, 202, 884 P.2d 910 (1994)). "'We apply the standards of RCW 34.05 directly to the record before the agency, sitting in the same position as the superior court.'" Id. (quoting City of Redmond v. Central Puget Sound Growth Mgmt. Hrgs. Bd., 136 Wn.2d 38, 45, 959 P.2d 1091 (1998).

The burden of demonstrating on appeal that the Board failed to follow a prescribed procedure, or erroneously interpreted or applied the law, or that the Board's order is not supported by substantial evidence, remains on the party asserting the error, in this case, on the City of Tukwila. RCW 34.05.570(1)(a). "In reviewing the agency's findings of fact under RCW 34.05.570(3)(e), the test of substantial evidence is 'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" King County v. Cent. Growth Mgmt, 142 Wn.2d at 553 (quoting Callecod v. Wash. State Patrol, 84 Wn. App. 663, 673, 929 P.2d 510 (1997)). Generally, "[t]his court reviews the Board's legal conclusions de novo, giving substantial weight to the Board's interpretation of the statute it administers." Id. (citing Diehl v. Mason County, 94 Wn. App. 645, 652, 972 P.2d 543 (1999)).

However, "deference to [city] planning actions, that are consistent with the goals and requirements of the GMA, supersedes deference granted by the APA and courts to administrative bodies in general." Quadrant v. State Growth Management Hearings Board, 154 Wn.2d 224, 238, 110 P.3d 1132 (2005). "Thus, a board's ruling that fails to apply this 'more deferential standard of review' to a [city's] action is not entitled to deference from this court." Id.

RCW 36.70A.200(1). The Board concluded that the City of Tukwila, by enacting Ordinance No. 2287, "**did not comply** with the RCW 36.70A.200(1) requirement of 'a process for identifying and siting' EPFs." CABR at 1161. We hold the Board erroneously interpreted or applied the law, failed to follow a prescribed procedure, and that the Board's conclusion is not supported by substantial evidence.

First, the Board's interpretation of RCW 36.70A.200(1) is faulty. By its own terms, that statute applies only to the City's comprehensive plan, not to an ordinance that simply designates zoning areas and defines what uses can occur in those areas: "The comprehensive plan of each county and city that is planning under RCW 36.70A.040 shall include a process for identifying and siting essential public facilities." RCW 36.70A.200(1) (emphasis added).

Second, to the extent the Board's conclusion implies Ordinance No. 2287 changed the City's comprehensive plan, eliminated the process in the comprehensive plan for identifying and siting essential public facilities, or was somehow inconsistent with the comprehensive plan, that conclusion is not supported by substantial evidence in the record. A review of Ordinance No. 2287 shows that the ordinance simply designates various zoning areas in Tukwila and defines what uses can occur in those areas; it does not make any changes to the City's comprehensive plan or the process for identifying and siting essential public facilities found in the plan. In fact, the Board's decision acknowledges that the comprehensive plan does indeed contain a process for identifying and siting essential public facilities:

Tukwila's Comprehensive Plan contains the necessary process at Goal 15.2. Policy 15.2.2 indicates how EPFs are identified:

> 15.2.2 "Essential public services" are facilities which provide basic public services provided in one of the following manners: directly by a government agency, by a private entity substantially funded or contracted for by a government agency, or provided by a private entity subject to public service obligations (i.e., private utility companies which have a franchise or other legal obligation to provide service within a defined service area).

Policy 15.2.3 provides the process for siting:

> 15.2.3. Applications for essential public facilities will be processed through the unclassified use permit process established in the City's development regulations. This process shall assure that such facilities are located where necessary and that they are conditioned as appropriate to mitigate their impacts on the community.

CABR 1155-56 (Final Decision and Order at 11-12, quoting Tukwila comprehensive plan).

Third, to the extent the Board's decision relies on the two moratorium ordinances enacted by Tukwila, the Board failed to follow a prescribed procedure, because it is undisputed that those ordinances were not before the Board. Although the Board stated in part of its decision (and Sleeping Tiger vigorously argues in its briefing) that the Board did not consider the moratorium ordinances in reaching its conclusion, it is nevertheless clear from the decision that the moratorium is, at least in part, the reason the Board concluded the City interfered with the process for identifying and siting essential public services:

> Plainly, a jurisdiction renders the siting of an EPF impracticable when, in response to an inquiry about a permit for a particular location allowed under its current zoning, the jurisdiction imposes a moratorium on permit applications while it amends its zoning to restrict such EPFs to a location other tha[n] the proponent's chosen site. The Board is left with a firm and definite conviction that such a

process does not comply with the GMA mandate of 'a process for identifying and siting' EPFs.

CABR 1160-61.

The City contends there was nothing improper about the moratoriums because they are authorized under the GMA, RCW 36.70A.390. It cites Matson v. Clark County Bd. of Commissioners, 79 Wn. App. 641, 904 P.2d 317 (1995) for the proposition that moratoriums are valid zoning tools. In Matson, this court held that such moratoriums are "designed to preserve the status quo so that new plans and regulations will not be rendered moot by intervening development." Matson, 79 Wn. App. at 644. Matson, however, did not address the issue raised by Sleeping Tiger and the Board, i.e., the allegation that a moratorium was used to frustrate the intent of another part of the GMA. Although a moratorium enacted for the purpose of frustrating another part of the GMA would indeed be troubling, in this case, neither moratorium ordinances were properly before the Board because Sleeping Tiger did not seek review of either of them.

In sum, the Board's conclusion that the City's enactment of Ordinance No. 2287, "did not comply with the RCW 36.70A.200(1) requirement of 'a process for identifying and siting' EPFs" is an erroneous interpretation or application of the law, is not supported by substantial evidence, and the Board failed to follow a prescribed procedure in reaching the conclusion.

RCW 36.70A.200(5). The Board also concluded that the City of Tukwila, in enacting Ordinance No. 2287, "**failed to comply** with RCW 36.70A.200(5) by adopting restrictive zoning that precluded the siting of crisis diversion facilities . . . ." CABR at

9

1166. On this issue, we hold that the Board failed to follow a prescribed procedure, and that the Board's conclusion is not supported by substantial evidence.

First, the Board failed to follow a prescribed procedure in that it reversed the burden of proof on this issue. Under RCW 36.70A.320(2), the burden of proof was on the petitioner, Sleeping Tiger, "to demonstrate that any action taken . . . is not in compliance with the requirements of" the GMA. The Board, however, reversed this burden and required the City to demonstrate that Ordinance No. 2287 did not preclude siting of crisis diversion facilities:

> the City contends that its restrictive zoning for the C/LI zone south of Strander Boulevard does not preclude the siting of crisis diversion facilities because there are available sites in the designated area at lease rates within [King County's request for proposal] limits.
>
> . . .
>
> What are the facts in the present record? Maps presented in the record show that the C/LI zone south of Strander Boulevard consists of at least 40 parcels. The City provided documentation of 7 properties available for purchase or lease. The record contains no information as to which, if any, of these individual properties is a viable site for crisis diversion services. It appears that the buildings in the area – including the 7 properties on the market – are industrial/warehouse buildings that would need to be retrofitted to meet the residential nature of the treatment facilities required by the [request for proposal]. We have only speculative evidence whether any of them could have been purchased/leased and rebuilt for DESC's purposes at a reasonable price or on the County's timeline.
> . . .
>
> . . .
>
> Here the City's restrictive zoning is simply not supported by substantial evidence indicating that siting a crisis diversion facility in the limited area is practicable.

10

CABR at 1164-65. Thus, although the Board acknowledged the ordinance permitted crisis diversion facilities, it required the City to prove siting the facilities was "practicable."

Second, the Board's conclusion that Ordinance No. 2287 precluded the siting of crisis diversion facilities is not supported by substantial evidence in the record. In fact, as is described above, the Board's decision acknowledges the opposite, namely, that the ordinance actually allows the siting of crisis diversion facilities in part of the City's C/LI zone that consists of at least 40 parcels. CABR 1164; see also Ordinance No. 2287 at CABR 29 ("The following uses may be allowed within the Commercial/Light Industrial District, subject to the requirements, procedures and conditions established in TMC Chapter 18.66, Unclassified Use Permits . . . Diversion facilities and diversion interim service facilities, provided they are located south of Strander Boulevard").

In sum, the Board's conclusion that Ordinance No. 2287 precluded the siting of crisis diversion facilities is not supported by substantial evidence in the record, and is the result of the Board failing follow a prescribed procedure

RCW 36.70A.020(7). The GMA specifies that "[a]pplications for both state and local government permits should be processed in a timely and fair manner to ensure predictability." RCW 36.70A.020(7). The Board concluded that by enacting Ordinance No. 2287, "the City's action **was not guided** by and, in fact, **substantially interferes** with [RCW 36.70A.020(7)]." CABR at 1169. We disagree and hold that the Board

11

erroneously interpreted or applied the law, that its decision is not supported by substantial evidence in the record, or that it failed to follow a prescribed procedure.

First, the Board's conclusion that Ordinance No. 2287 substantially interferes with timely and fair processing of permit applications is either an erroneous interpretation or application of the law, or it is not supported by substantial evidence in the record. Again, a review of Ordinance No. 2287 shows that the ordinance simply designates various zoning areas in Tukwila and defines what uses can occur in those areas. The ordinance makes no changes to the permit application process.

Second, as was explained above, to the extent the Board's conclusion on this issue relies on the two moratorium ordinances enacted by Tukwila, the Board failed to follow a prescribed procedure, because it is undisputed that those ordinances were not before the Board.

In sum, the Board's conclusion that that Ordinance No. 2287 substantially interferes with timely and fair processing of permit applications is an erroneous interpretation or application of the law, is not supported by substantial evidence in the record, or is the result of the Board failing to follow a prescribed procedure.

Declaration of invalidity. The Board invalidated Ordinance No. 2287 under RCW 36.70A.302(1), which empowers the Board to invalidate a development regulation that would "substantially interfere with the fulfillment of the goals" of the GMA. Given our resolution of the above issues, we also hold the Board erred by declaring that Ordinance No. 2287 to be invalid.

We affirm the decision of the superior court reversing the Board.[1]

WE CONCUR:

_____ Spelman, A.C.J.

_____ Dwyer, J.

_____ Grosse, J.

---

[1] As this appeal was being perfected, the City of Tukwila filed a verbatim transcript of proceedings of the superior court's oral ruling reversing the Board. Additionally, the City designated clerk's papers from the superior court. The designation included the City's motion to the superior court (denied by the superior court) seeking to supplement the record with a declaration from a person at DESC who indicated DESC selected the Seattle location because Sleeping Tiger's property was "an inappropriate location" for the crisis diversion facilities. Sleeping Tiger moved to strike these materials and limit the record on appeal to only the certified appeal board record made in front of the Board. In response, the City renewed the motion it made to the superior court, cross moving to supplement the record here. Given our resolution of the case relies only on evidence from the certified appeal board record, we grant Sleeping Tiger's motion and deny the City's motion.