IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PEYOTE CANYON, LLC, a Washington limited liability company, | ) ) ) | No. 34600-5-III |
| and | ) ) | |
| JERRY VAN ZUYEN, d/b/a/ PEYOTE CANYON, LLC, | ) ) ) | UNPUBLISHED OPINION |
| Appellants, | ) ) ) | |
| v. | ) ) | |
| COUNTY OF BENTON, a Political Subdivision of the State of Washington, | ) ) ) | |
| Respondent. | ) ) | |

SIDDOWAY, J. — Jerry Van Zuyen, d/b/a Peyote Canyon, LLC, appeals a trial court decision declaring valid a moratorium on marijuana production in Benton County's Rural Lands 5 zoning district, adopted by the county's Board of Commissioners (Board) in an emergency ordinance. Contrary to Mr. Van Zuyen's contentions, the Board's action was supported by sufficient facts establishing an emergency. We affirm.

FACTS AND PROCEDURAL BACKGROUND

After Washington voters approved Initiative Measure No. 502, legalizing recreational marijuana use, the Benton County Board of Commissioners adopted a policy allowing marijuana to be grown in the county's agricultural, rural lands 5 (RL-5), rural lands 20, light industrial, and heavy industrial zoning districts. Resolution 2014-167 (Feb. 25, 2014).[1] Sometime thereafter, Jerry Van Zuyen applied along with his wife for a tier 3 marijuana producer license, identifying the location of production as 18708 S. Clodfelter Road in Kennewick.

While the application was pending, Mr. Van Zuyen, who owned the Clodfelter Road property through Peyote Canyon, began modifying a pole building at the property t originally permitted as a residential garage and erecting an eight foot high fence, without obtaining either change of use or building permits. Beginning in April 2015, residents learning of Mr. Van Zuyen's plans began writing Benton County officials and attending Board and planning commission meetings to express concern about the incompatibility of a marijuana production operation with existing uses in the RL-5 zone. According to a staff report prepared on May 12, 2015, public comments at Board meetings held on April 28 and May 5 addressed concerns about the pungent aroma of a marijuana crop, the

---

[1] http://mrsc.org/getmedia/72dd0c2b-974d-4f3a-8e2b-c4e32e60c34c/b461r2014-167.pdf.aspx [https://perma.cc/52BT-4RCA].

nature and use of pesticides, aesthetic concerns about lighting, possible attraction of criminal activity, and security measures either required by a State license or electively installed by growers of marijuana.

In addition to complaining to Benton County officials about Mr. Van Zuyen's marijuana production plans, residents reported on his apparent failure to obtain permits for his construction. On May 1, 2015, the county sent a letter notifying Peyote Canyon that it had violated the Benton County Code by not obtaining a building permit for the fence or a change of use permit for modifications to the pole building. Peyote Canyon submitted building permit applications for the pole building and the fence a few days later, on May 4 and 6, 2015. On May 7, 2015, the county responded with a plan check correction list identifying a few additional items that needed to be addressed before permits could be issued.

At the same time county officials were corresponding with Mr. Van Zuyen about additional requirements for the building permits, they considered and began taking action toward imposing a moratorium on marijuana growing operations in the RL-5 zone.

At its meeting on May 12, 2015, without prior notice, the Board considered and unanimously passed Resolution 2015-357, adopting an emergency ordinance, Ordinance 561. The resolution described Ordinance 561 as "an immediate emergency interim

3

zoning amendment to prohibit the production of marijuana in the [RL-5] District."

Clerk's Papers (CP) at 118. The resolution set a date for a public hearing, established a

termination date for the interim zoning amendment, declared an emergency, and

temporarily amended a prior ordinance and county code provision. In addition to making

findings, the ordinance recited the county's decision that "it is appropriate to prevent

additional marijuana growing operations in the RL[-]5 District that allegedly are

incompatible with surrounding uses during the period of time necessary for the County to

consider permanent zoning amendments." CP at 120.

Mr. Van Zuyen submitted documentation the county had requested to support his

building permits, providing a revised floor plan on May 14, and the final item, a sewage

disposal construction permit on June 12. In the meantime, however, the county published

notice of the statutorily-required public hearing on Ordinance 561 on May 20 and

conducted the hearing itself on June 2. Minutes of the June 2 meeting summarize the

testimony of over three dozen community members, the majority of whom expressed

concern about marijuana production facilities in the RL-5 zone and asked that the Board

permanently prohibit marijuana production in the zone. Following the public testimony,

the Board voted to continue the hearing to June 16, 2015, to allow for preparation of

proposed written findings in support of continuing Ordinance 561.

4

On June 16, 2015, Benton County denied Peyote Canyon a building permit for the pole building remodel, citing Ordinance 561 and pointing out that while the permit application was now complete, it was incomplete on May 12 and therefore was not vested at the time the ordinance was adopted. Also on June 16, 2015, the Board passed Resolution 2015-442, adopting Ordinance 562, which continued Ordinance 561 for the remainder of the six-month period with the intention of referring to planning staff and the planning commission whether to adopt permanent legislation. Ordinance 562 made 11 additional findings, including a finding that individuals who spoke in favor of continuing Ordinance 561 had stated "valid" concerns. CP at 461.

In September 2015, the planning commission reviewed information from the planning department and conducted a public hearing, after which it recommended a permanent prohibition of marijuana in the RL-5 zone. In October 2015, the Board accepted the planning commission's recommendation and adopted Ordinance 565, permanently prohibiting marijuana production in the RL-5 zone and amending the Benton County Code to reflect the prohibition.

Peyote Canyon appealed the denial of the building permit to the Mid-Columbia Building Appeals Commission, which affirmed the denial. Mr. Van Zuyen, "d/b/a Peyote Canyon, LLC," then filed the action below, appealing the permit denial pursuant to the

Land Use Petition Act (LUPA), chapter 36.70C RCW, and seeking declaratory relief, including a declaration that the Board had not sufficiently identified facts constituting an emergency in support of Resolution 2015-357 and Ordinance 561. CP at 1.

Both parties moved for partial summary judgment on the issue of whether the emergency resolution and ordinance were valid. The trial court granted the county's motion. It also dismissed Peyote Canyon's LUPA claim with prejudice, affirming the Mid-Columbia Building Appeal Commission. Mr. Van Zuyen, d/b/a Peyote Canyon, LLC, appeals.

## ANALYSIS

The principal issue on appeal is Mr. Van Zuyen's contention that Ordinance 561 was insufficiently supported by findings of facts supporting an emergency. Before turning to that issue, however, we address threshold arguments made by the county.

*I. Mr. Van Zuyen's opening brief was not required to address the trial court's legal conclusion that no finding of an emergency was required; the finding of an emergency was required*

The county argues that because Mr. Van Zuyen did not separately assign error to the trial court's subsidiary conclusion that there was no need for the Board to find an emergency, his appeal must be denied.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). An order granting summary judgment is reviewed de novo, "considering the evidence and all

6

reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Because we review a summary judgment decision de novo, any findings of fact or conclusions of law, if entered by the trial court, are superfluous. *Wash. Optometric Ass'n v. Pierce County*, 73 Wn.2d 445, 447-48, 438 P.2d 861 (1968). An appellant is under no obligation to assign error to them. *Id.* at 448. The county's reliance on *McKee v. Am. Home Prod. Corp.*, 113 Wn.2d 701, 782 P.2d 1045 (1989) is misplaced. In that case, the appellant tried to challenge the operative orders dismissing claims to which he had not assigned error.

We disagree with the trial court's conclusion that the Board did not need to find an emergency.

It is undisputed that Benton County conducts its planning under chapter 36.70 RCW, the Planning Enabling Act (hereafter sometimes "the Act") which was adopted in 1959 in order "to provide the authority for, and the procedures to be followed in, guiding and regulating the physical development of a county." RCW 36.70.010; LAWS OF 1959, ch. 201. The county argues that within the Act, "RCW 36.70.790 applies to 'the adoption of any zoning map or amendment or addition thereto,' whereas RCW 36.70.795 and RCW 36.70A.390 expressly apply to the adoption of an 'interim zoning ordinance.'"

7

Br. of Resp't at 19.[2] The county persuaded the trial court that since "Ordinance No. 561 has nothing to do with a zoning map . . . RCW 36.70.790 does not apply." *Id.*

The county's argument ignores the significance of maps and mapping in the Planning Enabling Act, which makes both essential to zoning decisions. In identifying types of official controls a county's board of commissioners can adopt under the Act, the first is "[m]aps showing the exact boundaries of zones within each of which separate controls over the type and degree of permissible land uses are defined." RCW 36.70.560(1). Other regulations and controls are described as pertaining to "other subjects." RCW 36.70.560(4).

"Map" is used in the Act not only as a noun but as a verb; used as a verb, it refers to the process of zoning property. RCW 36.70.720 provides that once a county has a comprehensive plan, it may adopt zoning maps as an official control only for the areas covered by that plan. RCW 36.70.740 recognizes that because of practical reasons, a

---

[2] RCW 36.70.790 provides:

If the planning agency in good faith, is conducting or intends to conduct studies within a reasonable time for the purpose of, or is holding a hearing for the purpose of, or has held a hearing and has recommended to the board *the adoption of any zoning map or amendment or addition thereto* . . . the board, in order to protect the public safety, health and general welfare may, after report from the commission, adopt as an emergency measure *a temporary interim zoning map* the purpose of which shall be to so classify or regulate uses and related matters as constitute the emergency.

(Emphasis added.)

8

county may "progressively and separately" bring property within the county under the control of zoning by "officially map[ping]" it. RCW 36.70.780 provides that "pending the time that all property within a county can be precisely zoned through the medium of a zoning map," the unmapped property will be classified in a holding zone, with the holding zone applying to such areas "until they shall have been included in the detailed zoning map in the manner provided for the adoption of a zoning map."

Consistent with the importance of zoning maps under the Act, Benton County requires them to be a part of every zoning ordinance and incorporates them into the county code:

> (c)     Zoning Districts—Maps. (a)  The location and boundaries of . . . zoning districts are established by separate ordinances and shall be set forth on the official zoning maps of Benton County attached to said ordinances. Said official zoning maps in their entirety, including all amendments thereto, shall be a part of this code as if fully set forth and described herein. The official zoning maps shall be identified by signatures of the County Commissioners and shall carry the following words:
>
> > "We hereby certify that this map constitutes the Official Zoning Map as approved by Ordinance ____ of the Board of County Commissioners and signed by its chairman dated this ____ day of ____."

Benton County Code 11.04.015(c). Under the Act, then, there can be no zoning measure or change without adopting or amending a zoning map at the same time.

This is demonstrated by Washington decisions under the Act before 1992, when RCW 36.70.795, on which the County relies, was enacted. Before 1992, RCW 36.70.790

9

was the only possible source of county commissioner boards' authority to engage in interim zoning, and it was relied on for the adoption of interim zoning ordinances.

*Smith v. Skagit County*, 75 Wn.2d 715, 453 P.2d 832, was decided in 1969. In that case, the court treated RCW 36.70.790 as applying not only to an interim zoning map but also to the ordinance that would adopt the map:

> An interim zoning may be accomplished through adoption by the board of county commissioners of an interim zoning map *and ordinance* which shall serve to classify or regulate the use of land when warranted as an emergency measure to safeguard the public welfare pending completion of the zoning scheme and as a safeguard against manipulation of land uses in contemplation of a final zoning law. Interim zoning is no mere stopgap, but rather is a deliberate and purposeful device designed to *classify* or regulate uses of land and related matters (RCW 36.70.790), and is necessary to preserve the zoning scheme as presented to the public in the comprehensive plan and attendant maps and resolutions of ordinances.

*Smith*, 75 Wn.2d at 739 (some emphasis added).

Several years after *Smith*, our Supreme Court made a distinction between "interim" zoning ordinances that are sufficiently short-term to be eligible for adoption under RCW 36.70.790 and those that, because they are longer term, non-emergency measures, are subject to other procedural requirements of the Planning Enabling Act. Here again, the court did not limit the application of RCW 36.70.790 to zoning maps, as Benton County contends is required; it applied the statute to truly interim ordinances:

> [T]he term 'interim' is somewhat a misnomer when applied to the Clallam County resolution. The ordinance here involved is actually a detailed zoning code . . . . Any so-called 'interim zoning' ordinance of such detail, scheduled to be effective for 4 years, must be adopted pursuant to

10

> procedural requirements of the Planning Enabling Act, . . . RCW 36.70. *This is particularly true where, as here, there has been no determination that an 'emergency' exists which requires 'interim zoning.' 'Interim zoning,' under RCW 36.70.790, is meant to be only a temporary protective measure. It is not intended to be used as a means of adopting a virtually complete zoning ordinance for a relatively extended period of time.*

*Byers v. Bd. of Clallam County Comm'rs*, 84 Wn.2d 796, 800-01, 529 P.2d 823, (1974)

(emphasis added and omitted).

In *Mayer Built Homes, Inc. v. Town of Steilacoom*, this court held that "[i]nterim zoning describes a process whereby a governmental body in response to an emergency situation temporarily establishes *an ordinance* to classify or regulate uses of land pending either revision of the existing zoning code or adoption of a final, comprehensive zoning plan." 17 Wn. App. 558, 564, 564 P.2d 1170 (1977) (emphasis added) (citing 1 A. RATHKOPF, THE LAW OF ZONING AND PLANNING § 11.01 (4th ed. 1975) and *Smith*, 75 Wn.2d 715). Mayer had argued that the city's interim ordinance must fail because "it fails to declare a termination date and was not passed as an emergency measure." *Id.* at 565. The court did not question the proposition that interim zoning ordinances must be passed as emergency measures, but held that Steilacoom's ordinance was not in fact an interim zoning ordinance: "[t]here is no reference to any emergency situation, nor is there any indication in the ordinance or elsewhere in the record that the Town deviated from the regular notice and hearing procedures." *Id.*

11

In *Jablinske v. Snohomish County*, 28 Wn. App. 848, 851, 626 P.2d 543 (1981), this court characterized RCW 36.70.790 as "grant[ing] counties the authority to adopt emergency *measures*," and elsewhere held, explicitly, that "the [Planning Enabling A]ct's notice and hearing requirements do not apply to *emergency ordinances enacted pursuant to RCW 36.70.790*." (Emphasis added.)

In *Norco Const., Inc. v. King County*, 97 Wn.2d 680, 649 P.2d 103 (1982), our Supreme Court held that King County improperly relied on yet to be adopted zoning proposals as a basis for refusing to approve a plat. In so holding, it recognized that RCW 36.70.790 was the sole basis for interim zoning under the Planning Enabling Act, observing that "[t]he County had the ability to avoid entirely prospective planning circumvention by adopting interim zoning pursuant to RCW 36.70.790." *Id.* at 690.

In addition to these four cases, we have this court's 1995 decision in *Matson v. Clark County Board of Commissioners*, 79 Wn. App. 641, 904 P.2d 317 which involved a county whose planning was done under the "Planning Commission Act," chapter 35.63 RCW, rather than the Planning Enabling Act. In rejecting the plaintiff's argument that Clark County's adoption of a moratorium constituted an unconstitutional obstruction on the ability to obtain vested property rights, the court implied that Washington's vested rights rule could be violated if counties had an unbridled ability to adopt moratoria, but a narrower authority to "enact *emergency* rules without public hearing to prevent subsequent development applications from rendering the changes moot" did not. 79 Wn.

12

App. at 649 (emphasis added). And this court's footnote noting the enactment in 1992 of RCW 36.70.795 did not construe it as creating a new authority in counties to adopt interim ordinances rather than maps; instead, it described the legislature as having amended the Act to "place a six month renewable time limit and other conditions on moratoriums." 79 Wn. App. at 647 n.1.

Benton County provided the trial court with two bill reports on Engrossed Substitute S.B. 5727, the bill whose enactment resulted in the adoption of what is now codified as RCW 36.70.795. The bill reports do not support the county's contention that the 1992 legislature rejected any need for a county to find an emergency before adopting interim zoning. To the contrary: the bill reports merely reflect the legislature's rejection of a requirement that two defined types of emergency must be adopted in a particular fashion, supported by particular findings. *Compare* S.B. 5727, § 3, 52d Leg., Reg. Sess. (Wash. 1991), *with* LAWS OF 1992, ch. 207. *And see* H.B. REP. ON ENGROSSED SUBSTITUTE S.B. 5727, at 2, 52d Leg., Reg. Sess. (Wash. 1992) (summarizing testimony against the bill, and stating, "Local governments rarely use their authority to impose a moratorium. Moratoria are imposed only when an emergency situation exists").

The purpose of the 1992 legislation also belies the county's argument. It is true, as the county argues, that language paralleling the language of RCW 36.70.795 was found to provide authority for adoption of interim zoning measures in *Matson*, (*see* 79 Wn. App. at 645-46, construing RCW 35.62.200), and unlike RCW 36.70.790, RCW

13

36.70.795 does not state that interim zoning is authorized "in order to protect the public safety, health and general welfare" or that it is "adopt[ed] as an emergency measure." But one cannot overlook the purpose behind the 1992 legislation, which was to protect private property rights by imposing additional limitations on permit-granting agencies authorized to adopt moratoria, not to make moratoria easier. *See* FINAL B. REP. ON ENGROSSED SUBSTITUTE S.B. 5727, 52d Leg., Reg. Sess. (Wash. 1992). Each new provision recognized that a permit-granting agency adopting a moratorium was required to "justify[ ] its action" and nothing in the legislation suggested that the nature of the justification required by existing case law was changed. LAWS OF 1992, ch. 207, § 1. "Absent an indication that the Legislature intended to overrule the common law, new legislation will be presumed to be consistent with prior judicial decisions." *In re Marriage of Williams*, 115 Wn.2d 202, 208, 796 P.2d 421 (1990).

Interim zoning under the Act continues to require an emergency measure.

### *II. Mr. Van Zuyen's appeal is not moot*

The county argues that Mr. Van Zuyen's appeal is moot because he did not appeal the trial court's order dismissing his land use petition. "A case is moot if a court can no longer provide effective relief." *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984).

If we invalidate Ordinance 561 and Peyote Canyon seeks to proceed with modification of its pole building on the basis of vested rights in a building permit

14

application that the county admitted was complete on June 16, 2015, the county does not explain how it would be entitled to stop it. "Washington's vested rights doctrine . . . entitles developers to have a land development proposal processed under the regulations in effect at the time a complete building permit application is filed, regardless of subsequent changes in zoning or other land use regulations." *Abbey Road Grp., LLC v. City of Bonney Lake*, 167 Wn.2d 242, 250, 218 P.3d 180 (2009). Peyote Canyon does not have fewer legal rights than others by virtue of not appealing the LUPA decision.

What Mr. Van Zuyen wants and needs from his appeal is our invalidation of Ordinance 561. If he persuades us of its invalidity through his challenge to the trial court's declaratory judgment ruling, he will obtain that. No fact found against him in dismissing the LUPA claim required him to appeal that decision as well. The appeal is not moot.

*III. The emergency found by the Board was sufficiently supported by facts*

We come to Mr. Van Zuyen's contention that the Board insufficiently identified facts constituting the emergency required to justify interim zoning. He argues that the Board merely identified "concerns."

The Planning Enabling Act provides that ordinarily, a county planning commission must hold at least one public hearing before making a recommendation on the adoption of a new zoning ordinance or an amendment to an existing zoning ordinance. RCW 36.70.580. But RCW 36.70.790 allows a board of county

15

commissioners to "adopt as an emergency measure a temporary interim zoning map," "in order to protect the public safety, health and general welfare." With the adoption of RCW 36.70.795, the Act, read as a whole, no longer requires that a county board impose interim zoning only after receiving a report from its planning commission. It does impose time limits on conducting a hearing, making findings, and on the duration of moratoria. Mr. Van Zuyen does not contend that Benton County violated any requirement of the Act other than the requirement, recognized by case law, that any finding of an emergency must include a statement of the underlying emergent facts, without which it is invalid. *Matson*, 79 Wn. App. at 649 (citing *Federal Way v. King County*, 62 Wn. App. 530, 536, 543, 815 P.2d 790 (1991)).

Case law is clear that this court may conduct only a very limited review of an emergency declaration by a local legislature. *Id.* "A legislative declaration 'is conclusive and must be given effect unless it is on its face obviously false and a palpable attempt at dissimulation.'" *Id.* (internal quotation marks omitted) (quoting *Federal Way*, 62 Wn. App. at 536). "To determine the truth or falsity of the declaration of an emergency, the court will not inquire into the facts, but rather must consider only what appears upon the face of the act and its judicial knowledge." *Id.* This means "that courts are prohibited from considering the record below and are limited to examining the face of the ordinance and considering facts that may be judicially noticed." *Id.*

16

In the context of interim zoning measures, one judicially-noticeable fact is that zoning plans "'cannot be made in a day'" and that "'obviously it would be destructive of the plan if, during the period of its incubation, parties seeking to evade the operation thereof should be permitted to enter upon a course of construction which might progress so far as to defeat in whole or in part the ultimate execution of the plan.'" *Jablinske*, 28 Wn. App. at 851 (quoting *Miller v. Bd. of Pub. Works*, 195 Cal. 477, 496, 234 P. 381 (1925)). Accordingly, among the facts found to support the finding of an emergency in *Matson* were that, in adopting a moratorium on new cluster subdivisions, "a moratorium was necessary to prevent further developments in anticipation of proposed zoning changes" and in adopting an interim repeal of the plat review exemption for large lot subdivisions, "property owners would propose further developments prior to the enactment of any new regulations, thereby undermining the effectiveness of the regulations." 79 Wn. App. at 650.

Mr. Van Zuyen fails to recognize that one fact supporting Ordinance 561 is the judicially-noticeable fact that without a moratorium, applicants for marijuana production licenses could submit building permits for production facilities in the RL-5 zone, thereby frustrating the effectiveness of any effort to prohibit such production as incompatible with other property uses. Given this fact, the only additional fact or facts required to support the finding of an emergency are those establishing a reason why the Board would

17

want to investigate further whether marijuana production *would* be incompatible with

other property uses.

Ordinance 561 identified several:

WHEREAS, the County recently has received a great number of comments expressing concerns related to marijuana production in the proximity of the many residential areas within the RL[-]5 District; and,

WHEREAS, in particular some of the concerns raised relate to the pungent aroma of a marijuana crop, the nature and use of pesticides in connection with growing marijuana, the possible attraction of criminal activity to areas where marijuana is grown, and aesthetic concerns regarding lighting and other security measures either required by a State license or electively installed by growers of marijuana; and[,]

WHEREAS, based on the above it appears that marijuana production may not be compatible with the allowed uses in the RL[-]5 District and may result in an increased risk to health and safety of residents of those areas as well as increased code enforcement and law enforcement activities.

CP at 119-20. Moreover, in additional findings adopted in Ordinance 562, the Board

found that these concerns raised by individuals who spoke and submitted written

comments in favor of a moratorium on marijuana production in the RL-5 zone were

"valid." CP at 461.

The Board's findings do not suffer from the conclusory character that can render

an emergency enactment invalid as happened in *Swartout v. City of Spokane*, 21 Wn.

App. 665, 586 P.2d 135 (1978). In that case, the emergency was vaguely characterized as

"the need to provide funds urgently and immediately needed in interests of the public

18

health, safety, welfare and morals." *Id.* at 668. Here, the concerns raised by the public that could conceivably prove incompatible with other uses are identified.

The legislative declaration is not obviously false on its face and a palpable attempt at dissimulation. Under the controlling guidelines for review, it is conclusive and must be given effect.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.