**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 23, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 23, 2021

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SEVEN HILLS, LLC, a Washington limited liability company; and WATER WORKS PROPERTIES, LLC, a Washington limited liability company, | ) ) ) ) ) | No. 98730-1 |
| Petitioners, | ) ) | |
| | ) | En Banc |
| v. | ) ) | |
| CHELAN COUNTY, a municipal corporation, | ) ) | |
| Respondent. | ) ) | Filed: September 23, 2021 |

MADSEN, J.—In 2014, Seven Hills LLC began developing a cannabis[1]

production and processing business in Chelan County, Washington. After Seven Hills

procured the relevant permits and began building on its property, Chelan County

(County) passed Resolution 2015-94, which placed a moratorium on siting new cannabis-

related businesses. While the moratorium was in place, Seven Hills received the

necessary state licenses and began operating its cannabis production and processing

---

[1] The record and many decisional authorities in this case use the term "marijuana." The terms "marijuana" and "cannabis" are synonymous. We refer to cannabis throughout this opinion.

business. Shortly thereafter, the County passed Resolution 2016-14, which changed the relevant ordinances resulting in the barring of new cannabis-related businesses. Seven Hills received a notice and order to abate zoning from the County Department of Community Development. The order contained four allegations: that Seven Hills had (1) produced and processed cannabis in violation of Resolution 2016-14, (2) constructed and operated unpermitted structures, (3) operated unpermitted propane tanks, and (4) created a public nuisance. A hearing examiner found Seven Hills committed all four violations; the trial court and the Court of Appeals affirmed.

We hold that the County's resolution declaring a moratorium on siting new cannabis production and processing activities did not amend or replace existing zoning ordinances, and that Seven Hills established a nonconforming use prior to adoption of Resolution 2016-14. We hold that Resolution 2016-14 did amend the County's ordinances defining agricultural use, but did not retroactively extinguish vested rights. Accordingly, we reverse the Court of Appeals, in part, and remand for further proceedings.

## BACKGROUND

On November 6, 2012, Washington voters passed Initiative 502 (I-502), which decriminalized adult nonmedical use, possession, and production of cannabis. LAWS OF 2013, ch. 3. I-502 also established licensure for cannabis businesses through the Washington State Liquor and Cannabis Board (Board) to produce, process, and sell cannabis for recreational use. Former RCW 69.50.325-.369 (2013).

The Board promulgated and implemented rules related to cannabis operations. Former ch. 314-55 WAC (2013). In October 2013, the Board established the application requirements to be a licensed cannabis producer and processor. Former WAC 314-55-015 to -050, -079, -081. The Board then determined the maximum number of cannabis businesses per county, and prospective business owners applied for licensure through a lottery. Former WAC 314-55-081(1). Once the Board received an application for a producer, processor, or retailer license, the Board was required to give notice of the application to the local jurisdiction. Former RCW 69.50.331(7)(a). That jurisdiction had 20 days to approve or object to a cannabis business receiving a license. Former RCW 69.50.331(7)(b). If an objection was raised, the Board was required to give "substantial weight" to the local jurisdiction's objections if "based upon chronic illegal activity associated with the applicant's operations of the premises proposed to be licensed or the applicant's operation of any other licensed premises, or the conduct of the applicant's patrons inside or outside the licensed premises." Former RCW 69.50.331(9).

In addition, applicants for producer licenses were required to describe their plans for product transportation, growing operations, and protocols and procedures for testing cannabis. Former WAC 314-55-020(9). Similarly, processor applicants were obligated to report their plans for product transportation, processing operations, testing procedures and protocols, and packaging and labeling. *Id*.

In 2013, the County adopted Resolution 2013-73, which imposed a moratorium on locating and permitting cannabis-related facilities and uses within the county pursuant to

No. 98730-1

I-502. Thereafter, the County enacted another resolution, adopting the findings and conclusions of law establishing the moratorium and extending it until January 14, 2014. Chelan County Resolution 2013-88. On January 14, 2014, the County passed a third resolution, Resolution 2014-5, that terminated the interim land use controls previously established in Resolutions 2013-73 and 2013-88, and left the decision of siting and licensing cannabis operations to the Board.

Resolution 2014-5 stated:

> Section 2: Applications for permits or licenses to grow, process, dispense and/or sell marijuana/cannabis will not be accepted by employees of Chelan County and are only properly submitted to the Washington State Liquor Control Board as [cannabis] licensing is a state program and not a county program.
>
> . . . .
>
> Section 3. The Community Development Department is not required to draft or implement new licensing, zoning, comprehensive plans, or mapping. *Current Comprehensive Plan and zoning regulations will continue to be enforced.* The State of Washington shall conduct the licensing and regulation of [cannabis] growing, processing and dispensing facilities.

(Emphasis added.) Consequently, cannabis growing and processing activities in Chelan County fell within the rural industrial zone designation, which included agricultural uses.

There are two petitioners in this case.[2] The first, Water Works Properties LLC, owned land in the county. Clerk's Papers (CP) at 2. Water Works Properties leased the

---

[2] Water Works Properties LLC and Seven Hills collectively brought the present action. However, only Seven Hills is the petitioner of record.

No. 98730-1

land to the second petitioner, Seven Hills. The property is in a rural industrial zone and, at the time, was situated in unincorporated Chelan County. CP at 650.

In May 2014, Seven Hills submitted the state-required operating plan to the Board in order to establish a cannabis business. The plan included sections on security, traceability, qualifications and a training plan for employees, destruction of waste product, quality assurance protocols, and a description of the operation and premises (in which the purpose for a fence for the property was included). Seven Hills was incorporated as a cannabis business on August 27, 2014.

In December 2014, Seven Hills e-mailed the County to confirm any additional county-specific cannabis regulations to satisfy the State's licensing requirements. The County responded that no additional county requirements existed and that the County treated cannabis as an agricultural business. On February 5, 2015, Seven Hills exchanged several e-mails with the County regarding the construction of temporary greenhouses that "will last us until after the first harvest." CP at 611-13. The County's plans examiner provided the definition of a temporary greenhouse structure, stating a "'[t]emporary growing structure' means a structure that has the sides and roof covered with polyethylene, polyvinyl or [a] similar flexible temporary synthetic material (used for the commercial production of horticultural plants)." CP at 612; *see also* former WAC 51-50-007 (2013); Chelan County Code (CCC) 3.04.100(18) ("[s]hade cloth structures constructed for nursery or agricultural purposes" were exempted from both a building permit and a certificate of occupancy). The CCC also noted that a temporary structure

5

meeting this definition was exempt from the building code requirements and that no permit was required. CCC 3.04.100. Seven Hills also signed and notarized a commercial lease with Water Works on February 11, 2015, with the lease expressly stating that the property would be used by Seven Hills for the purpose of cannabis production and processing.

Seven Hills applied for and received a commercial eight-foot chain link fence permit on May 27, 2015. Seven Hills passed the final fence inspection on August 21, 2015, which the State required for cannabis operations. On September 29, 2015, the County adopted Resolution 2015-94, imposing a moratorium on the siting of licensed cannabis recreational sales, production, and processing, and on the implementation of the cannabis patient protection act and cannabis market reform following Second Engrossed Second Substitute House Bill 2136 (enacted in Laws of 2015, 2d Spec. Sess., ch. 4; relating to comprehensive cannabis market reforms and taxation) and Second Substitute Senate Bill 5052 (enacted in Laws of 2015, ch. 70; establishing the cannabis patient protection act). The County then adopted Resolution 2015-102 on November 16, 2015, which continued the moratorium until March 27, 2016.

Shortly after adoption of Resolution 2015-102, Seven Hills was granted a permit to install five 1,000 gallon propane tanks. Final inspection of the propane tanks and a certificate of occupancy were required. On December 2, 2015, the County inspected the tanks, found problems, and issued a correction notice. As far as the record shows, no further inspections were requested or conducted, and no certificate of occupancy was

No. 98730-1

issued for the installation of the propane tanks. The permit provided, "Every permit issued shall become invalid unless the work on the site authorized by such permit is commenced within 180 days after its issuance, or if the work authorized on the site by such permit is suspended or abandoned for a period of 180 days after the time the work is commenced." CP at 500, ¶ 6. Additionally, the permit required "[n]o building or structure [was to be] used or occupied, and no change in the existing occupancy classification of a building or structure or portion thereof shall be made until the building official has issued a certificate of occupancy except for permits listed in Section 105.2 [of the former 2012 International Building Code (IBC)]." *Id*.

On January 26, 2016, the Board sent Seven Hills a letter, with the County copied on the notice, approving it for a Tier 3 cannabis producer and processor license. Seven Hills began its cannabis operation upon receiving its license from the Board.

On February 16, 2016, the County adopted Resolution 2016-14. This resolution amended CCC 11.04 and 11.97, which amended the definition of "agricultural" to specifically exclude cannabis and mandated cessation of existing operations within two years. This effectively banned cannabis production and processing in Chelan County.

On March 29, 2016, the County adopted Resolution 2016-32. The resolution amended the text of the CCC, including sections 11.22, 11.23, 11.97, and 14.98, to provide consistency in the code.[3] The amended language read as follows: "All marijuana

---

[3] *See Table of Resolutions Codified*, CHELAN COUNTY CODE, https://www.codepublishing.com/WA/ChelanCounty/html/ChelcoRT.html [https://perma.cc/C376-79MX] (noting prior resolutions affected by Resolution 2016-32).

No. 98730-1

or cannabis in all forms, and the growing, production, processing, selling, or transporting thereof is excluded from the definition of agriculture, agriculture related, and agricultural use." CP at 461-62.

Later in the year, on July 13, 2016, the county code enforcement officer and the county permit technician made a site visit to Seven Hills. They noted that Seven Hills had an eight-foot fence, with seven grow structures. On September 9, 2016, the Chelan County Department of Community Development sent an initial notice to Seven Hills that the business operation was in violation of CCC provisions 11.04.010-.020 and 16.02.030. The notice alleged four violations: (1) production and processing of cannabis in violation of Resolution 2016-14, (2) construction and operation of unpermitted structures, (3) operation of unpermitted propane tanks, and (4) creation of a public nuisance.

The county director sent a memorandum to the Board on November 17, 2016, acknowledging the County's receipt of an additional cannabis license application from Seven Hills, dated October 19, 2016, and that the County's response deadline was November 8, 2016. The County objected to the license on the grounds that Resolution 2016-14 precluded cannabis production and Seven Hills had not secured the necessary building and mechanical permits. The Board did not respond to this late-filed objection.

On March 24, 2017, the County issued a notice and order to Seven Hills to abate zoning and building code violations. The notice contained the same violations as the initial notice sent on September 9. Later, on November 2, 2017, the code enforcement

8

officer and permit technician made a second site visit to the subject property. The second

visit revealed seven grow structures and a few grow lights turned on.

Seven Hills appealed the notice and order. On July 19, 2017, a public hearing was

held before the county hearing examiner. The hearing examiner upheld the violations

and Seven Hills appealed to the Chelan County Superior Court. The court affirmed the

hearing examiner's decision. Regarding the first violation, the court held Seven Hills had

continued to develop the property for its intended use throughout 2015 into early 2016.[4]

The court concluded that when the temporary moratorium went into effect on

September 29, 2015, it was not a legal nonconforming use under the CCC. As to the

second violation, the court held Seven Hills' inquiry regarding the requirements of a

temporary greenhouse did not include information that it was for a cannabis business.

Without this information, the County gave the petitioners accurate information.

Regarding the third violation, the court held that the petitioners never called to

schedule a final inspection, that Seven Hills did not cite to contrary evidence, and that

---

[4] Seven Hills argued in both the superior court and the Court of Appeals that the hearing
examiner improperly placed the burden of proof on them to prove that the notice and order were
incorrect and violated due process. Appellants' Opening Br. (No. 36439-9 Wash. Ct. App.
May 6, 2019) at 11; CP at 883. The superior court, citing to *ABC Holdings, Inc. v. Kittitas
County*, 187 Wn. App. 275, 286, 348 P.3d 1222 (2015), 1.21 of the Rules of Procedure for
Proceedings before Chelan County Hearing Examiner, and various provisions of Titles 14 and 16
of the CCC, rejected Seven Hills' argument. The Court of Appeals affirmed, noting that Seven
Hills did not suggest that the burden of proof mattered in this case. *Seven Hills, LLC v. Chelan
County*, No. 36439-9-III, slip op. at 1, 4 (Wash. Ct. App. Apr. 23, 2020) (unpublished),
https://www.courts.wa.gov/opinions/pdf/364399_unp.pdf. Seven Hills also contended in the
Court of Appeals that the hearing examiner's legal conclusions lacked the proper citation to law.
Appellants' Opening Br. at 15; *Seven Hills*, slip op. at 4-5. The Court of Appeals held the
hearing examiner's legal citations are irrelevant to the court's review because these citations are
not binding on the appellate court and are without legal significance. *Seven Hills*, slip. op. at 5.
Seven Hills does not raise these arguments in this court.

No. 98730-1

Seven Hills failed to meet its burden to show that the hearing officer erred regarding his findings and conclusions on this violation. As to the fourth violation, the superior court held that Seven Hills' business operation violated the CCC and was a nuisance.

The Court of Appeals affirmed the rulings below, concluding that Seven Hills did not establish a nonconforming use prior to the 2015 moratorium. *Seven Hills, LLC v. Chelan County*, No. 36439-9-III, slip op. at 6-9 (Wash. Ct. App. Apr. 23, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/364399_unp.pdf. The Court of Appeals reasoned that because Seven Hills did not receive its license to produce cannabis until January 26, 2016, when the moratorium was already in place, Seven Hills could not have had a valid nonconforming use at that time. It concluded Seven Hills' preparatory site work—building a fence and constructing temporary greenhouses—did not constitute a nonconforming use because Seven Hills did not obtain the final inspection necessary to lawfully operate the propane tanks. The court held the evidence supports each of the four violations. Seven Hills petitioned this court for review, which we granted. Order, No. 98730-1 (Wash. Nov. 4, 2020).

## ANALYSIS

Review is governed by the Land Use Petition Act, ch. 36.70C RCW. *City of University Place v. McGuire*, 144 Wn.2d 640, 647, 30 P.3d 453 (2001). To prevail, Seven Hills "must establish either the hearing examiner made a mistake of law, that there was insufficient evidence to support the decision, or that the decision was clearly

10

No. 98730-1

erroneous."[5]  *Id.*  The challenger bears the burden of establishing that one of these

standards has been met.  RCW 36.70C.130.

Unchallenged findings of fact are verities on appeal.  *Dumas v. Gagner*, 137

Wn.2d 268, 280, 971 P.2d 17 (1999).  The hearing examiner's decision is reviewed for

substantial evidence.  *Id.*  Errors of law or challenged findings of fact are reviewed de

novo.  *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 29, 891 P.2d

29 (1995).  When an appellate court reviews an administrative decision, it stands in the

same place as the superior court.  *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 405-

06, 120 P.3d 56 (2005).  Our review is limited to the record that was before the Chelan

County hearing examiner.  *Citizens for Responsible and Organized Planning v. Chelan*

*County*, 105 Wn. App. 753, 758, 21 P.3d 304 (2001) (citing RCW 36.70C.120; *Kahuna*

*Land Co. v. Spokane County*, 94 Wn. App. 836, 841, 974 P.2d 1249 (1999)).

Initially, the County argues that Seven Hills failed to assign error to any of the

hearing examiner's findings of fact.  The County argues the only findings of fact Seven

Hills references are paragraphs 39 and 40, and as a result, the findings are verities.

*Dumas*, 137 Wn.2d at 280.  We disagree.  In its appeal to superior court, Seven Hills

assigned error to findings of fact 33 and 36-41, and to conclusions of law 3-8.  Seven

---

[5] RCW 36.70C.130(1) provides the standards for granting relief:
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise; [or]
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court; [or]
> (d) The land use decision is a clearly erroneous application of the law to the facts.

11

No. 98730-1

Hills was not required to challenge the hearing examiner's findings of fact again in this court.

## I. Effects of 2015 Moratorium

### A. Moratorium

Seven Hills argues the Court of Appeals (and by extension, the superior court and hearing examiner) erred in starting their nonconforming use analysis from September 29, 2015, the date that Resolution 2015-94 was passed—rather than February 16, 2016, the date the County adopted Resolution 2016-14, changing the definition of "agricultural" to exclude cannabis. Seven Hills asserts that Resolution 2015-94 did not amend the County's existing zoning regulations, which would make its use of the property a nonconforming use. It contends that a change in zoning regulations is effective only when a legislative body, such as Chelan's Board of County Commissioners, passes legislation to amend an existing ordinance or to create a contrary zoning ordinance. It disputes that a moratorium constitutes a change in the law. Instead, Seven Hills argues that the 2015 moratorium suspended only the County's ability to process permits that might be related to the production and processing of cannabis.

Seven Hills also contends it established a nonconforming use of the property prior to the County enacting a contrary zoning ordinance (Resolution 2016-32) on March 29, 2016. Moreover, Seven Hills asserts the moratorium did not affect the Board's authority to issue Seven Hills' cannabis license or affect Seven Hills' work on permitting unrelated to the County. This position, according to the County, would render the moratorium a

12

No. 98730-1

nullity.  Relying on *Development Services of America, Inc. v. City of Seattle*, 138 Wn.2d 107, 117, 979 P.2d 387 (1999), the County asserts that courts construe zoning ordinances to accomplish their plain purpose and intent.

Local governments have broad authority to enact and regulate land use and business licenses within their jurisdictions.  WASH. CONST. art. XI, § 11.  This provision, known as "home rule," presumes that local governments are autonomous.  *Watson v. City of Seattle*, 189 Wn.2d 149, 166, 401 P.3d 1 (2017) (citing Hugh Spitzer, *"Home Rule" vs. "Dillon's Rule" for Washington Cities*, 38 SEATTLE U. L. REV. 809 (2015); *Citizens for Financially Responsible Gov't v. City of Spokane*, 99 Wn.2d 339, 343, 662 P.2d 845 (1983)).  I-502's licensing and operation system did not preempt "the field of [cannabis] regulation."  2014 Op. Att'y Gen. No. 2, at 4.  Receipt of a license from the Board does not entitle a licensee to process, produce, or sell cannabis without other applicable or necessary approvals from local jurisdictions.  Former WAC 314-55-020(9).

No party questions the County's authority to enact a moratorium.[6]  The purpose of a moratorium is to "preserve the status quo so that new plans and regulations will not be rendered moot by intervening development."  *Matson v. Clark County Bd. of Comm'rs*,

---

[6] Washington statutes do not define moratorium.  36 MICHAEL F. CONNELLY, WASHINGTON PRACTICE: WASHINGTON LAND USE § 4:27 n.1, at 201 (2020 ed.).  In this absence of a statutory definition, words are given their common law or ordinary meaning.  *Id.* (quoting *State v. Chester*, 133 Wn.2d 15, 22, 940 P.2d 1374 (1997)).  "'Moratorium' is defined as '1 a: a legally authorized period of delay in the performance of a legal obligation or the payment of a debt . . . b: waiting period set by some authority: a delay officially required or granted . . . 2 : a suspension of activity: a temporary ban on the use or production of something.'"  *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1469 (2002)).  "'In practice, moratoriums are used by government entities to temporarily suspend certain activities, such as land use practices, while additional action is undertaken or considered.'"  *Id.* (quoting 2015 Op. Att'y Gen. No. 1, at 5).

No. 98730-1

79 Wn. App. 641, 644, 904 P.2d 317 (1995). Courts, recognizing the temporary nature of moratoriums, have tended to be deferential to the local governing jurisdiction. *Id.* But "'[b]ecause a moratorium is only a temporary suspension of established regulations, it does not repeal, amend, or contradict them.'" *Save Our Scenic Area & Friends of the Columbia Gorge v. Skamania County*, 183 Wn.2d 455, 465, 352 P.3d 177 (2015) (quoting *Biggers v. City of Bainbridge Island*, 162 Wn.2d 683, 709, 169 P.3d 14 (2007) (plurality opinion)). Furthermore, a county may not change the rules applicable to an already submitted application. *Matson*, 79 Wn. App. at 648-49.

In the present case, the hearing examiner erred. The examiner gave little weight to the plain language of Resolution 2015-94 and the purpose of the moratorium. In the findings of fact and conclusions of law, the hearing examiner stated:

> 29.1.3 The Hearing Examiner finds that Resolution 2015-94, by its language, in prohibiting the siting of licensed recreational [cannabis] production and processing facilities, prohibited the production and processing of [cannabis] within Chelan County.
>
> . . . .
>
> 6. . . . Resolution[s] 2015-94, 2015-102 or 2016-14 prohibit the [s]iting of [cannabis] processing and production facilities in Chelan County during their effective dates.

CP at 368, 373.

First, the plain language of Resolution 2015-94 limits its scope. *See Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 41, 156 P.3d 185 (2007) (applying the rules of statutory interpretation to municipal ordinances). The resolution enacted a six month moratorium on the *siting* of licensed recreational cannabis retail stores, production, and

14

processing. It also recognized separately the State's role in licensing, noting that "the

Washington State Liquor and Cannabis Board . . . license[s the] production, processing,

and retail sales of recreational [cannabis] and [related] products." CP at 113 (Resolution

2015-94). The temporary moratorium applied specifically to siting state-licensed

businesses. The resolution also provided that "[w]hile this moratorium is in effect, no

application for a building permit, occupancy permit, . . . fence permit, variance,

conditional use permit, or other development permit or approval shall be accepted as

either consistent or complete by any county department." *Id*. at 114. The moratorium *did*

*not change* the applicable regulations regarding the production and processing of current

cannabis businesses. Rather, it suspended the County's process of establishing cannabis

businesses.

Thus, while the hearing examiner's Finding of Fact 29.1.3 correctly recited the

language of Resolution 2015-94, the conclusion of law based on it overlooks the

resolution's limited scope. The measure did not suspend all cannabis businesses—it

spoke only to the siting of *newly* licensed businesses.

Second, the resolution's use of the term "siting" supports the limited nature of the

measure. *Black's Law Dictionary* defines a "site" as "[a] place or location; esp[ecially], a

piece of property set aside for a specific use." BLACK'S LAW DICTIONARY 1667 (11th ed.

2019). Resolution 2015-94 does not define the term, thus we may look to the dictionary

definition. *State v. Kintz*, 169 Wn.2d 537, 547, 238 P.3d 470 (2010). Applying *Black's*

definition here, the resolution temporarily suspended the County's power to designate

locations where otherwise licensed cannabis businesses could operate.

We hold that the hearing examiner erroneously concluded that a change in zoning

regulations had occurred by virtue of the County's resolution declaring a moratorium.

Until the zoning regulations were amended in 2016, the existing zoning regulations

continued to be in effect.  Resolution 2014-5 (noting that the County's current

comprehensive plan and zoning regulations would continue to be enforced).

B. Vested Rights – Permits

1. Cannabis license

Washington State developers who have filed a timely and complete building

permit application acquire a vested right to the processing of their application in

accordance with the zoning and building ordinances in effect at the time of the

application.  *W. Main Assocs. v. City of Bellevue*, 106 Wn.2d 47, 50-51, 720 P.2d 782

(1986), *overruled in part on other grounds by Chong Yim v. City of Seattle*, 194 Wn.2d

682, 451 P.3d 694 (2019); *see also Erickson & Assocs., Inc. v. McLerran*, 123 Wn.2d

864, 867-68, 872 P.2d 1090 (1994), *overruled in part on other grounds by Chong Yim*,

194 Wn.2d 682.  The purpose of a zoning ordinance[7] is to restrict classes of individual

---

[7] Zoning is generally understood to regulate the use of property by controlling property improvements.  *Sammamish Cmty. Council v. City of Bellevue*, 108 Wn. App. 46, 53, 29 P.3d 728 (2001).  This court has described zoning as "'the regulation of the use of property—to structural and architectural designs of buildings; also the character of use to which the property or the buildings within classified or designated districts may be put.'"  *Shelton v. City of Bellevue*, 73 Wn.2d 28, 35, 435 P.2d 949 (1968) (emphasis omitted) (quoting *Seligman v. Belknap*, 288 Ky. 133, 135, 155 S.W.2d 735 (1941)).  *Washington Practice* explains that selecting an acceptable location for a project depends primarily on whether the property is zoned

buildings and uses to specified areas in the county. *State ex rel. Miller v. Cain*, 40 Wn.2d 216, 221, 242 P.2d 505 (1952). "This immunity from regulations adopted subsequent to the time of vesting pertains only to the right to establish the development." *Rhod-A-Zalea & 35th, Inc. v. Snohomish County*, 136 Wn.2d 1, 16, 959 P.2d 1024 (1998) (emphasis omitted).

Under the CCC, "an application shall become vested on the date a determination of completeness is made." CCC 14.08.040. The CCC also provides that "any permit issued by the county prior to the effective date of the resolution codified in this title may be developed as set forth in the permit. If the permit becomes invalid prior to development of improvements or uses, the provisions of this chapter shall be in effect on the subject property." CCC 11.97.060; CP at 124. The vested rights doctrine specifically does not concern usage because "the doctrine applies only to permit applications." *Rhod-A-Zalea*, 136 Wn.2d at 16. Once usage has been established and is able to continue, "this doctrine has no bearing." *Id*.

When Seven Hills applied for its cannabis license in May 2014, Resolution 2014-5 was in effect. That resolution stated that businesses interested in applying for such licensure were properly submitted to the Board because cannabis licensing "is a state program and not a county program." Resolution 2014-5. And the resolution noted that

---

for that project. 33 DAVID K. DEWOLF & MATTHEW C. ALBRECHT, WASHINGTON PRACTICE: WASHINGTON CONSTRUCTION LAW MANUAL § 5:1, at 57 (2d ed. 2018). Local zoning codes vary because Washington has no statewide law addressing minimum zoning laws. *Id*. Generally, local zoning codes consist of the code itself and a map of the relevant jurisdiction with the zoning areas marked. *Id*.

No. 98730-1

the State would conduct the licensure and regulation of growing, processing, and dispensing facilities. *Id*. Seven Hills complied with the county regulations in effect when it applied to the Board for its state license.

In this case, the hearing examiner found that

> 27. Per records maintained by the State of Washington, Seven Hills, LLC was not issued a [Cannabis] Producer Tier 3 license and a [Cannabis] Processor license for the subject property until January 26, 2016. Seven Hills, LLC's use of the property for the production and processing of [cannabis], therefore, was not lawfully established nor was it in actual physical operation prior to September 29, 2015. As such, it is not a legal nonconforming use and it is not entitled to the two-year amortization period.
>
> . . . .
>
> 38. Prior to September 29, 2015 the Applicants do not have any vested rights to proceed as a [cannabis] production and processing facility.

CP at 368, 372.

Prior to the moratorium, the County had no regulations pertaining to licensing cannabis operations other than the provisions of Resolution 2014-5 directing that existing zoning regulations would continue to be enforced. The 2015 moratorium did not amend the CCC, it merely precluded the County from accepting applications for enumerated permits, which did not include licenses for cannabis growing and production. Resolution 2014-5 recognized that the Board alone was the "permitting authority" for cannabis licensing. Seven Hills was issued a valid state license, and based on the county zoning ordinance in effect at that time, Seven Hills was entitled to start producing and processing

18

cannabis on its property on January 26, 2016, assuming it also obtained other permits that may have been required by the County.

We hold that the hearing examiner erred when it found that the September 29, 2015 moratorium was the operative date for determining whether Seven Hills had a vested right to proceed with its cannabis operation.

## 2. Greenhouse Permits

As to the alleged violation of erecting an unpermitted building in violation of IBC section 105, Seven Hills contends that it complied with county regulations related to its greenhouses. Specifically, it asserts that the greenhouses were exempt from the building permit requirements at the time and that the County confirmed that understanding. Additionally, Seven Hills points to RCW 19.27.065 to support its position that under the State Building Code Act, ch. 19.27 RCW, as adopted by the CCC through RCW 19.27.031, greenhouses were not buildings and did not require building permits.

Washington State adopted, and incorporated by reference, the International Fire Code (IFC), the IBC, and the International Residential Code (IRC) in 2003. Former RCW 19.27.031(1) (2003). The State required, and still does require, all counties to incorporate the State Building Code by reference. *Id*. The building code also vested the authority in the State Building Council (Council) to issue opinions that related to the codes at the "request of a local official charged with the duty to enforce the enumerated codes." *Id*. Similarly, former WAC 51-04-060 (2007), citing RCW 19.27.031, gave the

19

Council the ability to "render opinions relating to the building code at the request of a local code official."

Under the 2012 IBC, building permits and certificates of occupancy are generally required. However, one of the exceptions to a building permit, and by extension, a certificate of occupancy, is a temporary structure. Former IBC 111.1 (2012); CP at 543. Specifically, "[s]hade cloth structures constructed for nursery or agricultural purposes" were exempted from both a building permit and a certificate of occupancy. Former IBC 105.2(10) (2012).

Comparably, CCC 3.04.100, which mirrors the IRC, has similar exemptions for certain activities. Shade cloth structures that were constructed for nursery or agricultural purposes were one of these exceptions. CCC 3.04.100(18). Under the "District Use Chart," CCC 11.04.020 permitted an agriculturally related industry to develop in a rural industrial zone subject to CCC 11.93 and 11.88. CCC 11.04.020.

Prior to March 29, 2016, when the County revised the definition of "agricultural" to exclude cannabis, prospective cannabis businesses in the County needed only to meet the definition of an "agriculturally related industry." Former CCC 14.98.145 (2014). The County defined an "agriculturally related industry" as an industry that is "directly related to the processing, storage, or physical or chemical alteration of the agricultural product." *Id*.; CP at 130. The CCC went on to define an "agricultural use" as the "tilling of the soil, the raising of crops, forestry, horticulture, gardening, . . . or business[es] such as . . . wholesale greenhouses or similar uses." Former CCC 14.98.130 (2014); CP at

No. 98730-1

130. The County also defined an "agricultural structure" as a "building or structure . . . necessary for the support and service of agricultural activities." Former CCC 14.98.110 (2014); CP at 129. The County did not exclude cannabis from the definition of agricultural activities until Resolution 2016-14.

State law also exempted and continues to exempt temporary grow structures that are intended for the commercial production of horticultural plants. *See* RCW 19.27.065; WAC 51-50-007; former WAC 51-50-007 (2013). However, the State defines an agricultural product differently from the County. Former RCW 82.04.213(1) (2014), governing state B&O (business and occupation) taxes, defined an agricultural product as a "product of horticulture." Under that provision, agricultural product specifically "does not include [cannabis], usable [cannabis], or [cannabis]-infused products."

On March 12, 2015, the Council issued Interpretation No. 15-4, concerning WAC 51-50-007's exception for temporary growing structures. The issue before the Council was whether this exception applied to large-scale greenhouses used for the year-round production of cannabis. The Council concluded this exception applies only to temporary structures with a temporary covering that is used for passive heat retention and frost protection, not to year-round structures. Citing RCW 82.04.213, the Council noted that that statute does not classify cannabis as an agricultural product that can be considered as an ornamental plant, flower, vegetable, or fruit. *See also* RCW 82.04.213 (defining "marijuana," that is cannabis, for purposes of Washington's B&O tax); *see* State Building Council Interpretation No. 15-04; CP at 602.

21

No. 98730-1

In this case, the hearing examiner found that

29.2.4 Neither Water Works, nor any agent, applied for a building permit for construction of these growing structures. As such, the growing structures are in violation of the building regulations.

. . . .

39.    The Appellants also argue that the State Building Code Council's interpretation of 15-4 is not binding. However, the Hearing Examiner finds that the challenged interpretation by the Building Code Council is a binding interpretation of the application of the State Building Code.

40.    The Hearing Examiner agrees that under RCW 82.04.213, that [cannabis] must be explicitly mentioned and because it is not, the interpretation by the Building Code Council is lawfully allowed and enforceable.

CP at 369, 372.

Seven Hills argues that the hearing examiner's reliance on the Council's interpretation was erroneous and does not bind the County's decision on growing structures. The Council's website explicitly states that "[t]he final opinions (interpretations) of the Council are advisory only." *Answers & Opinions*, WASHINGTON STATE BUILDING CODE COUNCIL, https://sbcc.wa.gov/answers-opinions [https://perma.cc/JZ5Y-2NYT]. RCW 19.27.031 and WAC 51-04-060 authorize the Council to issue opinions and interpretations that address questions raised by local building officials. Neither authority states the Council's interpretations are binding. Thus, Seven Hills contends, the Council's State Building Code Interpretation No. 15-04 does not control whether the soft-sided growing structures required a permit under the CCC because the County did not adopt such an interpretation in its code.

22

No. 98730-1

While the County is correct that courts give great deference to an agency's interpretations of its own promulgated regulations, the Council's website explicitly acknowledges that its interpretations are only advisory. Local jurisdictions retain enforcement authority and neither RCW 19.27.031 nor WAC 51-04-060 implicitly or explicitly state that the Council's interpretations are binding. Additionally, the Council's interpretation relied on the definition of "agricultural product" in the B&O taxation provision. The CCC defines "agricultural product" differently. As noted above, chapter 69.50 RCW was not intended to supersede the County's regulation of cannabis. Therefore, county ordinances control, and the County did not adopt the Council's interpretation into its code.

We hold that the Council's interpretation of the State Building Code is advisory and that the County did not adopt the Council's interpretation. Thus, the CCC did not require Seven Hills to obtain a permit to construct or use its greenhouse structures.

### 3. Propane Tank Permits

The County also alleged a violation in connection with operating propane tanks in its notice and order to abate zoning. The hearing examiner found that Seven Hills did not call for a final inspection of its propane tanks and, without it, could not lawfully operate the tanks.

Seven Hills applied for and later received a permit for propane tanks on November 30, 2015, subject to final inspection. Seven Hills asserts it completed all the work requested by the County yet the County refused to perform the final inspection and,

No. 98730-1

by extension, issue the certificate of occupancy that was required for the installation of the propane tanks. This refusal, Seven Hills contends, violates due process. Under Seven Hills' interpretation, a building permit is not subject to the discretion of the building official. Rather, a building permit must be immediately processed once a permit applicant satisfies the requirements for propane tanks because processing a building permit is a ministerial act. Any delay in processing opens the County to liability for delay damages under chapter 64.40 RCW, and the delay in processing the propane permit is within the County's control.

As noted above, the IFC, IRC, and IBC are incorporated by reference through RCW 19.27.031. IFC 106.2 authorizes the fire code official to conduct inspections that are necessary for the business to comply with the state, county, and IFC requirements. Former IFC 106.2 (2012). A business bears the burden of notifying the fire code official when work on the site is ready for inspection. Former IFC 106.2.1. Once the fire code official receives the notification from the business, they conduct the requested inspection and either indicate that the completed work meets the requirements in the permit or notify the permit holder where the work is deficient. Former IFC 106.2.2. The business is required to correct any work that is deficient because propane tanks cannot be used for the purpose of operating equipment unless the tanks were approved by the fire code official for use. Former IFC 106.2.1; former IFC 6105.1 (2012). Additionally, a structure using propane tanks cannot be occupied prior to the fire code official issuing a

No. 98730-1

permit and conducting the associated inspections that indicate the applicable provisions have been met.  Former IFC 105.3.3 (2012).

The permit itself notes that a permit becomes invalid unless either (1) the work on the site authorized by such permit is commenced within 180 days after its issuance or (2) the work authorized by the site is suspended or abandoned for a period of 180 days after work commences.  As a condition of the permit, it is the duty of the permit holder to notify the building official they are ready for final inspection.  A building or structure cannot be used or occupied until the building official issues a certificate of occupancy. *Id.* Propane tanks are not exempt from a certificate of occupancy.

In this case, the hearing examiner found that

> 29.3.3 Final inspection and approval of the installation of the propane tanks was required prior to their use.  Even though required under IFC Section 106.2.1, Water Works Properties LLC failed to call for an inspection of the installation of the propane tanks after a correction notice was issued.  No final approval was obtained for installation of the tanks.  Use of the propane tanks without first obtaining a certificate of approval is a violation of IFC Section 106.2.2. Furthermore, no approval was received to fuel the furnaces with the propane gas in violation of IFC Section 6105.1.  Occupancy of the growing structures that are heated using the unapproved propane system and furnaces constitutes a violation of IFC Section 105.3.3.

CP at 371.

Seven Hills was afforded notice that it was required to obtain a final inspection of the tanks before using them and that it was incumbent on Seven Hills to request that inspection.  Resolution 2015-94 established a moratorium on issuing permits, and because Seven Hills did not have a final inspection before the moratorium was in effect,

25

No. 98730-1

county officials could not perform that inspection. Seven Hills does not show that it requested a final inspection prior to the moratorium. Accordingly, Seven Hills cannot show that it had a final inspection or that the County violated its due process rights when it did not perform a final inspection.

The failure to secure a final inspection has a limited effect on the present case. The County has repeatedly stated that absent compliance with *every* required permit and license, a cannabis business could not continue operations after the 2015 emergency moratorium. As to propane tanks, Seven Hills applied for and received permits, and received a correction notice but did not obtain a final inspection. Based on this, the County contends the use was not lawful. The failure to obtain a final inspection puts Seven Hills out of compliance with a building permit; this does not, however, make the use necessarily *unlawful*.

The county code allows for after-the-fact permits. CCC 16.14.030. Such permits can be issued and upon issuance, shall be charged twice the rate or fee identified in chapter 3.24 of the code. *Id*. But for the County's interpretation of the moratorium, which did not change any existing zoning ordinances, Seven Hills ostensibly could have applied for an after-the-fact permit for the propane tanks. And, a "nonconforming use is a use which lawfully existed prior to the enactment of a zoning ordinance." *Rhod-A-Zalea*, 136 Wn.2d at 6. The use here is cannabis production and processing, and Seven Hills indicated the propane tanks were "optional" to this use.

26

No. 98730-1

II. Nonconforming uses

Seven Hills contends it was error for the courts below to conclude that it did not establish a nonconforming use. Seven Hills argues it could establish a nonconforming use of its property any time prior to February 16, 2016—the enactment date for Resolution 2016-14, which terminated cannabis as an agricultural use in a rural industrial zone. We agree.

Seven Hills is correct that cannabis growing and processing activities were lawful uses prior to the adoption of Resolution 2016-14, which changed agricultural zoning to exclude cannabis operations. As explained above, the moratorium imposed by Resolution 2015-94 did not alter the CCC that allowed agricultural uses, including cannabis production and processing. It was not until the County changed the agricultural zoning laws that cannabis growing and processing became nonconforming uses. This is also clear from the CCC, which defines a nonconforming use as "a lot, use, building or structure which was lawful prior to the adoption, revision, or amendment of a zoning ordinance, but which fails by reason of such adoption, revision or amendment to conform to the current requirements of the zoning district." CCC 14.98.1300.

The nonconforming rights and the vested rights doctrines go hand in hand. "A nonconforming use is a use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance." *Rhod-A-Zalea*, 136 Wn.2d at 6. "The right to continue a nonconforming use despite a zoning ordinance . . . is sometimes referred to as a 'protected' or 'vested' right." *Id*. However,

27

this right refers only to "the right not to have the use immediately terminated in the face of a zoning ordinance which prohibits the use" and does not "change, alter, extend, or enlarge the existing use." *Id*. at 6-7 (emphasis omitted).

Seven Hills bears the initial burden of proof to establish the existence of a nonconforming use. *McMilian v. King County*, 161 Wn. App. 581, 591, 255 P.3d 739 (2011). Seven Hills must show (1) that the use existed before the County enacted the zoning ordinance, (2) that the use was lawful at the time, and (3) that it did not abandon or discontinue the use. *First Pioneer Trading Co. v. Pierce County*, 146 Wn. App. 606, 614, 191 P.3d 928 (2008); *King County Dep't of Dev. & Envtl. Servs. v. King County*, 177 Wn.2d 636, 643, 305 P.3d 240 (2013). Once Seven Hills has established the nonconforming use, then the burden shifts to the County to prove Seven Hills had abandoned or discontinued the nonconforming use. *Van Sant v. City of Everett*, 69 Wn. App. 641, 648, 849 P.2d 1276 (1993).

Establishing a nonconforming right can turn on the possession of a valid permit or valid use prior to the enactment of an ordinance. Three cases are relevant to that inquiry: *Van Sant*, *First Pioneer Trading*, and *King County Department of Development & Environmental Services*.

In *Van Sant*, a property owner applied for and received a nonconforming commercial and multifamily use permit in Everett. *Id*. at 643. The property owner's neighbors appealed the decision; before the hearing examiner, the property owner presented evidence showing that Everett's board of adjustment had previously

28

acknowledged the nonconforming rights by "authorizing a previous owner to 'utilize the vacant non-conforming commercial structure for commercial purposes.'" *Id*. at 643-44. The *Van Sant* court held that the owner had established a prior nonconforming commercial use, and as a result, the burden shifted to the city to prove the owner had abandoned or discontinued the nonconforming use. *Id*. at 649.

In *First Pioneer Trading*, a Pierce County zoning ordinance allowed for heavy manufacturing uses. 146 Wn. App. at 609. First Pioneer located its steel manufacturing business in Pierce County, operating and maintaining commercial and outdoor structures, as well as commercial industrial vehicles. *Id*. In 1988, Pierce County amended its zoning ordinance to require a conditional use permit to use the land for the same manufacturing operations. *Id*. A few years later, Pierce County again rezoned the area that required a conditional land use permit for any use other than a one- or two-family home. *Id*. Pierce County eventually issued a violation notice to First Pioneer, alleging its use violated the local zoning ordinance based on the company's existing industrial and structural uses and lack of building permit records for the structures on its site. *Id*.

First Pioneer unsuccessfully appealed the violation to a hearing examiner and the superior court. *Id*. at 611-12. At the Court of Appeals, First Pioneer relied on *Van Sant*, 69 Wn. App. at 652, to argue that the absence of a business license and tax records did not show unlawful nonconforming use. *First Pioneer*, 146 Wn. App. at 616. The Court of Appeals disagreed, reasoning that First Pioneer's failure to obtain permits is a proper consideration for "whether First Pioneer had established the existence of a legal,

preexisting use." *Id*. at 617 (emphasis omitted). *Van Sant* held that the court below erred when it concluded a property owner had abandoned a vested preexisting use "based on the absence of business permits or licenses." *Id*. The *First Pioneer* court affirmed the hearing examiner's findings that First Pioneer had not submitted any records establishing that the site was used to conduct a business. *Id*.

Likewise, in *King County Department of Development & Environmental Services*, a business owner rented a property to process organic materials into animal bedding and fuel. 177 Wn.2d at 639. Shortly after, the business began operating a similar processing facility near the first parcel. *Id*. Both owners entered into an oral lease agreement, where the business owner could bring equipment and materials to the property to be processed at a later date. *Id*. "This operation fit under the definition of an 'interim recycling facility' under the then-existing King County Code and required no use-specific permitting." *Id*. The business continued to increase activity, although the grinding and processing of the materials had not begun. *Id*. at 639-40. King County amended its code to require permits for materials processing facilities, and the animal bedding business fell under this classification. *Id*. at 640. The business owner began grinding organic materials in response to the zoning change. *Id*. The county investigated and notified the business owner that he was operating without a permit. *Id*.

The business owner administratively appealed the order. *Id*. The King County hearing examiner found the operations on the site required three stages for full implementation: "site preparation, grinding of raw materials, and transfer of those

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

materials off site"; the examiner also found that all of the essential first-stage site preparation activities were underway prior to the zoning ordinance change. *Id*. at 640. The hearing examiner reasoned that the business owner's use of the materials processing facility may constitute a preexisting use, even though the grinding of materials occurred after the zoning change. *Id*. at 640-41. King County appealed to the superior court, which held that the business owner did *not* have a nonconforming use because grinding materials had not occurred for 60 days, as specifically required by the county code. *Id*. at 642. The Court of Appeals then reversed the superior court and reinstated the hearing examiner's decision. *Id*.

This court agreed with the superior court that no nonconforming use existed. *Id*. at 647. We concluded that the business owner had not completed the three stages of its business; specifically, when the zoning regulations changed, the business owner had not started processing these materials. *Id*. Moreover, the business owner did not appeal the hearing examiner's conclusion that permits were required to engage in preparatory work before the code changed. *Id*. Consequently, the business owner did not meet his burden of proof. *Id*. at 648.

Here, the County relies on *Van Sant* and *First Pioneer* to argue that a legal nonconforming use must have all the "necessary entitlements" to be lawful at the time of a zoning change. Corrected Suppl. Br. of Resp't Chelan County at 17. The County asserts that Seven Hills bears the burden to demonstrate its legal nonconforming use, "whereas the burden of proof to establish abandonment or discontinuance of a legal

No. 98730-1

nonconforming use is on the local government entity." *Id*. The County's reliance on these cases is misplaced.

*Van Sant* concerned abandonment of a nonconforming use, and the only meaningful distinction between establishing a nonconforming use and abandoning such use is to whom the burden of proof falls. The facts regarding use of the property will determine whether a nonconforming use exists on the property. Nonconforming use law is not so much a bright line as much as it is about establishing principles that guide a court's decision-making. All nonconforming use cases are fact-specific, and all require concrete evidence that the petitioner did more to establish their nonconforming use rights than just preparatory work. Nevertheless, courts have repeatedly found that licensing and other regulations unrelated to zoning—whether business licensing, business and occupation tax regulations, or building permits—are not determinative of the existence of a nonconforming use in a particular zone. *Van Sant*, 69 Wn. App. at 651-52. Courts recognize that a violation of other ordinances or licensing requirements unrelated to zoning does not void a nonconforming use. *Id*. (collecting cases).

The "mere intention or contemplation of an eventual use of land is insufficient to establish an existing use for protection as a nonconforming use following passage of a zoning ordinance." *Anderson v. Island County*, 81 Wn.2d 312, 321-22, 501 P.2d 594 (1972). Substantially more than intention or contemplation of land use occurred in this case. Seven Hills produced considerable evidence that a nonconforming use existed before Resolution 2016-14, altering the definition of agricultural use. Before

February 26, 2016, Seven Hills had spent $750,000 toward costs and site improvements. It had acquired its license to produce and process cannabis on its property and obtained the required fence permit. Further, Seven Hills constructed greenhouses, which fell under the permit exceptions of IBC 111.1 and CCC 11.04.020, and obtained a permit for its propane tanks. While Seven Hills failed to procure a final inspection and approval of its propane tanks, the tanks were not required by the CCC or the Board in order to conduct cannabis production operations within the rural industrial zone. Finally, Seven Hills' use of its property to grow and process cannabis was lawful prior to the enactment of Resolution 2016-14 because it waited until it had received its cannabis growing and processing licenses to start planting.

Additionally, Seven Hills contends that Resolution 2016-14 unlawfully created a retroactive date for the establishment of nonconforming rights to September 29, 2015, the date on which the temporary moratorium was imposed. The County disagrees, arguing that Resolution 2016-14 was not a retroactive application of the moratorium, rather, it is an "example of the ordinary purpose and function of any moratorium, followed by new zoning regulations." Corrected Suppl. Br. of Resp't at 18. The County asserts Resolution 2016-14 merely frames the change in regulation from the moratorium. It argues that the newly enacted development regulations allowed for an amortization period of two years but only for those in operation prior to the date of the moratorium, which does not include Seven Hills. It argues that if the moratorium is unenforceable, then any marijuana producers could similarly evade a moratorium.

We reject the County's interpretation for three reasons. First, a moratorium does not amend or change a zoning law. The language at issue in Resolution 2016-14 states that "[u]ses herein declared permanently prohibited that were lawfully established and in actual physical operation prior to September 29, 2015, are nonconforming and must cease, abate, and terminate no later than March 1, 2018. Structures associated with nonconforming uses shall also cease, abate, and terminate as of the same date." CP at 122. The plain language of the resolution deprives those with lawfully established uses and in actual physical operation of their vested rights before the zoning laws were amended.

Second, statutes typically apply prospectively unless legislative indication to the contrary exists. *Macumber v. Shafer*, 96 Wn.2d 568, 570, 637 P.2d 645 (1981). Third, it is well recognized that nonconforming uses are vested property rights that are protected. *Van Sant*, 69 Wn. App. at 649 (citing cases). A statute cannot be given retroactive effect if the effect interferes with vested rights, particularly when the result is to deprive one of his or her property without due process of law, regardless of the County commissioners' intentions. *See Gillis v. King County*, 42 Wn.2d 373, 376, 255 P.2d 546 (1953).

The policy of zoning legislation is to *phase out* a nonconforming use. As this court noted many years ago,

> The theory of the zoning ordinance is that [the] nonconforming use is in fact detrimental to some one or more of those public interests (health, safety, morals or welfare) which justify the invoking of the police power . . . "it cannot be increased nor can it be extended indefinitely if zoning is to accomplish anything."

34

No. 98730-1

*Miller*, 40 Wn.2d at 220-21 (quoting *Selligman v. Von Allmen Bros.*, 297 Ky. 121, 179

S.W. 2d 207 (1944)). Here, the County amended its zoning laws, rendering Seven Hills'

use of its property a nonconforming use. Through the changes to its code, the County can

phase out nonconforming uses—but it cannot do so through retroactive application of its

zoning laws. Resolution 2016-14 is ineffective as to established uses existing before its

adoption.[8]

Seven Hills established a lawful nonconforming use that existed prior to the

adoption of Resolutions 2015-93, 2015-102, and 2016-14. *First Pioneer*, 146 Wn. App.

at 614. Accordingly, the hearing examiner erred in its findings of fact and conclusions of

law that Seven Hills failed to meet its burden of proof. *See* CP at 368, 372, 373 (hearing

examiner's findings of fact 29.1.5, 36, and 41, and conclusions of law 3-6).

CONCLUSION

We hold that the County's moratorium on the siting of cannabis processing and

growing operations did not amend existing zoning laws. Under Resolution 2014-5,

cannabis growing and processing was a lawful use in rural industrial zones in Chelan

County until the County adopted Resolution 2016-14, which amended the CCC to

exclude cannabis operations from the definition of agricultural uses. Resolution 2016-14

and associated amendments, not the County's moratorium, made cannabis growing and

---

[8] In the County's view, regardless of the enactment of the moratorium, Seven Hills would have been required to stop all cannabis production and processing activity no later than March 2, 2018. The County is correct that it has the authority to terminate nonconforming uses. However, a constitutional requirement nevertheless exists to provide a reasonable amortization period. *Rhod-A-Zalea*, 136 Wn.2d at 7-8. Given the posture of this case, the issue of when a nonconforming use must cease is not properly before us.

35

processing a nonconforming use.  Even though described as retroactive, Resolution 2016-14 is ineffective as to established uses existing before its adoption because an amendment to zoning laws cannot operate retroactively to the detriment of vested rights.

We also hold that Seven Hills was not required to obtain permits for its greenhouses because the CCC did not require a permit and the Council's State Building Code Interpretation No. 15-04 regarding the exception in the IBC for greenhouses was advisory only.  Further, we hold that while Seven Hills had a valid permit for its propane tanks, use of the permit required a final inspection and certificate of occupancy, which Seven Hills did not obtain.  Accordingly, Seven Hills' use of its propane tanks without a certificate of occupancy violated the CCC.

Finally, we hold that Seven Hills established a lawful use prior to adoption of Resolution 2016-14, which is the action that rendered its use nonconforming.  Thus, Seven Hills' use of its property to grow and process cannabis was not a nuisance as defined by the CCC.  We reverse the Court of Appeals, in part, and remand for further proceedings consistent with this opinion.

No. 98730-1

_____
                      Madsen, J.

WE CONCUR:

_____        _____
                                         Gordon McCloud, J.

_____        _____
              Owens, J.

_____        _____
            Stephens, J.                        Whitener, J.

37

*Seven Hills, LLC et al. v. Chelan County*, No. 98730-1
(Yu, J., dissenting)

No. 98730-1

YU, J. (dissenting) — Washington's recreational cannabis industry is highly

regulated at the state level, and counties have authority pursuant to their

constitutional police powers to impose further regulations and restrictions.[1]  WASH.

CONST. art. XI, § 11.  Like some other localities, Chelan County (County) decided

to permanently ban cannabis-related businesses after determining that their

negative impacts were threatening the "ability to maintain current quality of life

standards in the county."  Clerk's Papers (CP) at 120.

Seven Hills LLC wanted to start a cannabis production business in the

County, but it had not yet done so when the County placed a temporary

moratorium on the siting of new marijuana businesses prior to the permanent ban.

Nevertheless, Seven Hills claims it had the right to violate the permanent ban and

---

[1] For purposes of this opinion, I use the terms "cannabis" and "marijuana" interchangeably.

1

*Seven Hills, LLC et al. v. Chelan County*, No. 98730-1
(Yu, J., dissenting)

operate a recreational marijuana production business in the County as a prior

nonconforming use.  The majority agrees.  I cannot.

According to the majority, the moratorium is irrelevant because it prohibited

only the "siting" of cannabis-related businesses, and Seven Hills sited its business

before the moratorium was enacted.  However, as a matter of undisputed fact and

unambiguous law, Seven Hills's cannabis production business did not exist until

several months after the moratorium came into effect.  And despite the majority's

insistence to the contrary, a business that does not yet exist cannot already be sited.

Therefore, I would affirm the Court of Appeals and hold that Seven Hills did

not establish a valid prior nonconforming use by unlawfully siting its cannabis

production business in the County while the moratorium was in effect.  The

majority's decision to the contrary rests on an unreasonable interpretation that

threatens every Washington county's authority to employ and enforce temporary

moratoria as a critical tool in "mak[ing] and enforc[ing] within its limits all such

local police, sanitary and other regulations as are not in conflict with general laws."

WASH. CONST. art. XI, § 11.  Therefore, I must respectfully dissent.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2012, Washington voters passed Initiative 502 (I-502), "effectively

decriminalizing many aspects of marijuana production and use" at the state level.

*Seven Hills, LLC v. Chelan County*, No. 36439-9-III, slip op. at 1 (Wash. Ct. App.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Apr. 23, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/
364399_unp.pdf.  Initially, the County "declined to adopt regulations adding to
state statutes and regulations governing recreational marijuana," and "several retail
sales, production, and processing businesses . . . commenced operations" in the
County.  CP at 113, 115.  Seven Hills became interested in starting a cannabis
business, and it began preparations to do so in May 2014.

In 2015, new state legislation was enacted, which the County believed would
"remove or lessen some of the regulations contained in I-502."  *Id.* at 113; *see*
LAWS OF 2015, ch. 70; LAWS OF 2015, 2d Spec. Sess., ch. 4.  Then on September
23, 2015, the County received a notice from the Washington State Liquor and
Cannabis Board (WSLCB) that it would "begin accepting new applications for
retail licenses on October 12, 2015, and will not limit the number of licensed retail
stores."  CP at 113.  The WSLCB's notice "encouraged local governments to
revise regulations before it [began] processing new applications."  *Id.*

The County determined that the 19-day window it was given was
insufficient "to conduct code drafting and required public notice and hearings"
because new cannabis-related businesses in an area "can have significant impacts
on the community" and "much research and analysis [was] necessary" before a
well-informed, final decision could be made.  *Id.*  Therefore, on September 29,
2015, the County adopted Resolution No. 2015-94, which placed "a six month

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Seven Hills, LLC et al. v. Chelan County*, No. 98730-1
(Yu, J., dissenting)

moratorium on the siting of licensed recreational marijuana retail stores,

production, and processing," and further prohibited county departments from

accepting any applications for cannabis-related business permits while the

moratorium was in place. *Id.* at 114. As of that time, Seven Hills's plans for a

cannabis production business in the County had not yet come to fruition because

(in addition to other outstanding preparatory work), Seven Hills still did not have a

license to operate any marijuana business from the WSLCB.

Following a timely public hearing in November, the County determined that

the few cannabis-related businesses that were lawfully operating in the County

prior to the moratorium had already caused significant adverse effects on the local

community. A comprehensive final decision regarding how the County should

zone for cannabis-related businesses, and what it should do about the businesses

already in operation, required approximately five additional months for "[f]urther

research and study," community input, and "public hearings by the planning

commission and by the board of commissioners." *Id.* at 116. Therefore, the

County lawfully extended the moratorium through March 27, 2016.

On January 26, 2016, Seven Hills received its state license from the WSLCB

to engage in cannabis production and processing. The issuance of such a license

"shall not be construed as a license for, or an approval of, any violations of local

rules or ordinances." WAC 314-55-020(16). The moratorium expressly

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Seven Hills, LLC et al. v. Chelan County*, No. 98730-1
(Yu, J., dissenting)

prohibiting the siting of cannabis-related businesses in the County was still in

effect.  Nevertheless, Seven Hills chose to move forward with its plans to site its

newly licensed marijuana business in the County, and "immediately began planting

cannabis for production."  CP at 609.

In the meantime, the County was conducting research, receiving community

input, and holding public hearings to determine the best course of action.  Doing so

revealed "direct negative impacts incurred by individuals, families, businesses, and

the local economy resulting from all forms of marijuana or cannabis production

and processing."  *Id.* at 118.  These negative impacts included concerns for

personal safety and the safety of children, impacts on the supply of irrigation water

for preexisting agricultural uses, and significant challenges for law enforcement in

distinguishing between lawful and unlawful marijuana businesses, among others.

The Board of County Commissioners determined that "because the impacts

of marijuana land uses are notably negative, such uses should not be sited in any

zone in Chelan County."  *Id.* at 120.  Therefore, on February 16, 2016, the County

enacted Resolution 2016-14, which adopted a permanent ban on "the

establishment, siting, location, permitting, licensing or operation of any and all

recreational marijuana or cannabis production and processing."  *Id.* at 122.  The

resolution included an amortization period, which gave marijuana businesses "that

were lawfully established and in actual physical operation prior to September 29,

2015," two years to cease operations. *Id.* Seven Hills's cannabis production business was clearly neither lawfully established nor in actual physical operation prior to September 29, 2015. Nevertheless, it continued operations following the permanent ban.

In July 2016, the Chelan County Department of Community Development conducted a site visit to the property where Seven Hills was operating and observed grow structures and propane tanks being used for a cannabis production business in violation of the County's permanent ban. After issuing an initial notice for these violations, the County issued a final notice and order of abatement on March 24, 2017, which required Seven Hills to immediately cease operating its cannabis production business and remove the grow structures and the propane tanks. Seven Hills appealed.

The Chelan County hearing examiner found that "Seven Hills, LLC's use of the property for the production and processing of marijuana . . . was not lawfully established nor was it in actual physical operation prior to September 29, 2015." *Id.* at 665. Therefore, the hearing examiner affirmed the notice and order, finding that Seven Hills's "continued use of the subject property for marijuana production and/or processing is a violation of Resolution 2016-14" and that Seven Hills had not established a valid prior nonconforming use. *Id.*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Seven Hills, LLC et al. v. Chelan County*, No. 98730-1
(Yu, J., dissenting)

Seven Hills sought review of the hearing examiner's decision in Chelan

County Superior Court pursuant to the Land Use Petition Act (LUPA), ch. 36.70C

RCW.  The superior court affirmed the hearing examiner in a memorandum

decision and entered an order dismissing Seven Hills's LUPA petition.  The Court

of Appeals affirmed in a unanimous, unpublished opinion, and we granted Seven

Hills's petition for review.  I would affirm.

ANALYSIS

The majority goes to great lengths to characterize this as a factually complex

and highly technical case, in which Seven Hills conscientiously researched and

followed all existing laws and the County wrongfully attempted to "retroactively

extinguish vested rights."  Majority at 2.  However, the plain language of the

September 2015 moratorium provided ample notice to everyone with plans for a

cannabis-related business in the County that they must halt any development of

those plans.  Seven Hills disregarded this notice and sited its new cannabis

production business in the County while the moratorium was in effect.  This

unlawful course of action could not establish a valid prior nonconforming use.

A.      Seven Hills did not establish a valid prior nonconforming use

Zoning ordinances serve "those public interests (health, safety, morals or

welfare) which justify the invoking of the police power." *Rhod-A-Zalea & 35th,*

*Inc. v. Snohomish County,* 136 Wn.2d 1, 7, 959 P.2d 1024 (1998).  Because

7

*Seven Hills, LLC et al. v. Chelan County*, No. 98730-1
(Yu, J., dissenting)

consistent zoning enforcement serves the public interest, Washington law disfavors

nonconforming uses. *Open Door Baptist Church v. Clark County,* 140 Wn.2d 143,

150, 995 P.2d 33 (2000).

"A nonconforming use is a use which *lawfully* existed prior to the enactment

of a zoning ordinance, and which is maintained after the effective date of the

ordinance, although it does not comply with the [current] zoning restrictions."

*Rhod-A-Zalea,* 136 Wn.2d at 6 (emphasis added). Where a valid prior

nonconforming use has been legally established, the property owner has a

"'vested' right . . . not to have the use *immediately terminated* in the face of a

zoning ordinance which prohibits the use." *Id.* However, a nonconforming use

may be subject to an amortization period, such as the one the County provided in

its permanent ban on cannabis-related businesses. *Id.* at 7; CP at 122.

Nonconforming uses are an exception to the broad regulatory authority

afforded to local governments by the state constitution, and they "limit the

effectiveness of land-use-controls, imperil the success of community plans and

injure property values." *Rhod-A-Zalea,* 136 Wn.2d at 8; *see* WASH. CONST. art.

XI, § 11. Therefore, the nonconforming use doctrine must be applied narrowly

"'to protect only those uses which were *legally established* before' the change in

regulation." *King County Dep't of Dev. & Envt'l Servs. v. King County*, 177

Wn.2d 636, 643, 305 P.3d 240 (2013) (*King County DDES*) (emphasis added)

8

Seven Hills, LLC et al. v. Chelan County, No. 98730-1
(Yu, J., dissenting)

(quoting 1 ROBERT M. ANDERSON, AMERICAN LAW OF ZONING § 6.11 (Kenneth H.

Young ed., 4th ed. 1996)).

"'[T]he initial burden of proving the existence of a nonconforming use is on

the land user making the assertion.'" *City of University Place v. McGuire*, 144

Wn.2d 640, 647, 30 P.3d 453 (2001) (alteration in original) (quoting *Van Sant v.*

*City of Everett*, 69 Wn. App. 641, 647-48, 849 P.2d 1276 (1993)).  Where a

landowner asserts that their apparently unlawful activity is actually a valid prior

nonconforming use, they must show "(1) the use existed prior to the contrary

zoning ordinance, (2) *the use was lawful at the time*, and (3) the applicant did not

abandon or discontinue the use for over a year prior to the relevant change." *King*

*County DDES*, 177 Wn.2d at 643 (emphasis added).  Seven Hills cannot meet this

burden because its cannabis production business was not lawful at any time.

Seven Hills sited its cannabis production business in the County only after it

received a license to produce cannabis from the WSLCB in January 2016.  It could

not have done so before then, because that would have been unlawful because it

was prohibited by state law: "A marijuana license applicant may not exercise any

of the privileges of a marijuana license until the WSLCB approves the license

application."  WAC 314-55-015(4).  But siting its cannabis production business

and starting operations after it received its license in January 2016 was unlawful as

9

*Seven Hills, LLC et al. v. Chelan County*, No. 98730-1
(Yu, J., dissenting)

well because at that time, Seven Hills was explicitly prohibited from doing so by the County's moratorium.

Temporary moratoria enacted by resolutions are not merely symbolic expressions of local preference. They are "legislative acts" by local governments pursuant to their police powers, which "may be adopted as emergency zoning ordinances." *In re Recall of Ackerson*, 143 Wn.2d 366, 375, 20 P.3d 930 (2001) (per curiam); *see also* WASH. CONST. art. XI, § 11; RCW 36.70.790; *Jablinske v. Snohomish County*, 28 Wn. App. 848, 626 P.2d 543 (1981). The purpose of such interim zoning measures is "to preserve the status quo so that new plans and regulations will not be rendered moot by intervening development." *Matson v. Clark County Bd. of Comm'rs*, 79 Wn. App. 641, 644, 904 P.2d 317 (1995) (citing RICHARD L. SETTLE, WASHINGTON LAND USE AND ENVIRONMENTAL LAW AND PRACTICE § 2.13, at 72 (1983)). For temporary moratoria to serve their intended purpose, they must be enforceable.

Seven Hills cannot possibly have established a lawful use when it sited its cannabis production business in the County in direct violation of a valid moratorium that temporarily prohibited such activity. Thus, as the hearing examiner, superior court, and Court of Appeals all correctly determined, Seven Hills did not meet its burden of establishing a valid prior nonconforming use. I would therefore affirm.

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

B.     The majority's narrow interpretation of the County's moratorium is inconsistent with its plain language

The majority contends that although the moratorium explicitly halted "the siting of licensed recreational marijuana retail stores, production, and processing," CP at 114, what it actually meant to do was "temporarily suspend[ ] the County's power to designate locations where otherwise licensed cannabis businesses could operate." Majority at 16. This interpretation of the moratorium unreasonably strips it of its intended purpose and explicitly stated effect, defying established principles of legislative interpretation.

General principles of statutory interpretation apply when we interpret local legislation. *Sleasman v. City of Lacey*, 159 Wn.2d 639, 643, 151 P.3d 990 (2007). We must effectuate the legislative body's intent by avoiding superfluousness and giving effect to all of the plain language in context. *Id.*; *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-12, 43 P.3d 4 (2002). In addition, "[r]ecognizing the emergency, temporary, and expedient nature of [temporary moratoria], the courts have tended to be more deferential than usual to the local legislative body." *Matson*, 79 Wn. App. at 644 (citing SETTLE, *supra*, § 2.13, at 73). The majority's narrow interpretation of the moratorium in this case violates each of these basic principles.

11

*Seven Hills, LLC et al. v. Chelan County*, No. 98730-1
(Yu, J., dissenting)

First, the majority's reading would render virtually the entire moratorium superfluous because at the time the moratorium was enacted, Chelan County did not "designate locations" for cannabis businesses. *Contra* majority at 16. As the majority acknowledges, previous County resolutions "left the decision of siting and licensing cannabis operations to the [WSLCB]." *Id.* at 4. The moratorium cannot have been enacted to suspend a power the County was not exercising in the first place.

Second, to the extent the majority believes the moratorium "merely precluded the County from accepting applications for enumerated permits," it fails to give effect to the plain language of each of the provisions in Resolution 2015-94. *Id.* at 18. In one section, the County placed a moratorium on the "siting" of marijuana businesses. CP at 114. In another, separately enumerated section, the County also prohibited its departments from accepting permit applications for such businesses while the moratorium was in place. *Id.* The majority's reading ignores the former provision entirely.

Finally, by focusing on the narrowest possible meaning of a single word in isolation ("siting"), the majority disregards the deference we owe to the intent of the Board of County Commissioners, as evidenced by the plain language of the moratorium specifying the reason for its enactment. The County received a notice from the WSLCB that starting in October 2015, there would likely be a substantial

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

increase in the number of marijuana licenses issued throughout the state. The

County was reasonably concerned about the possible local impacts of these

cannabis-related businesses that would soon be receiving licenses. Seven Hills did

not have a license yet. Thus, its act of siting a newly licensed cannabis production

business in the County in January 2016 was precisely what the moratorium was

intended to prohibit. Disregarding this clear intent threatens the County's

constitutional right to home rule.

Contrary to the majority, I would interpret the moratorium as it was written

and intended. Therefore, I would hold that no one may operate a marijuana

business in violation of the County's permanent ban unless they had already

established a vested right to do so prior to the moratorium's enactment. In this

case, it is clear that Seven Hills did not have any such vested right.

Although Seven Hills applied for a business license from the County before

marijuana businesses were subject to local regulations, Seven Hills did not thereby

obtain a vested right to the continued nonexistence of such regulations. Indeed, it

cannot have done so as a matter of law:

> Consistent with the narrowness of [the nonconforming use] doctrine,
> we held in *Rhod-A-Zalea* that *a landowner does not "vest" the entire
> code at the time the use is established, but that only the use itself is
> vested* and a landowner must still comply with subsequent changes to
> the land use code not involving that specific use. *Rhod-A-Zalea*, 136
> Wn.2d at 6-7. Thus, even where a nonconforming use was lawfully
> established, the rights of a landowner may still be limited to only what

13

*Seven Hills, LLC et al. v. Chelan County*, No. 98730-1
(Yu, J., dissenting)

> is required to protect the landowner's due process interests.
> *Nonetheless, the use must actually exist before it can be termed a*
> *"preexisting use" and a due process right attaches to a landowner*.

*King County DDES*, 177 Wn.2d at 646 (emphasis added).  Thus, a landowner

cannot obtain a vested right in the *nonexistence* of local regulations because "a

landowner does not 'vest' the entire code." *Id.*  The most a landowner can

establish is a vested right to continue a prior nonconforming *use*, if that use was

established before the local regulations existed.

Here, Seven Hills did not establish a nonconforming use prior to the

moratorium.  The majority points to Seven Hills's preparations to start a cannabis

production business as evidence of a prior nonconforming use.  But at a minimum,

a cannabis production business must involve some cannabis production.  Seven

Hills did not begin producing cannabis until it received its license from the

WSLCB in January 2016.  The process of applying for that license necessarily

required a significant start-up investment without any guarantee of materializing,

regardless of the County's actions.  *See* WAC 314-55 (describing the application

process and requirements to obtain a marijuana license from the WSLCB).  Our

precedent is clear that preparation—however financially significant—is

insufficient to establish a valid prior nonconforming use because "[a]llowing some

contemplated future use to be considered a 'preexisting' use would be contrary to

14

*Seven Hills, LLC et al. v. Chelan County*, No. 98730-1
(Yu, J., dissenting)

the requirements of the preexisting use doctrine." *King County DDES,* 177 Wn.2d at 647.

It is clear from the plain language of the moratorium that the County intended to temporarily halt further development of any planned cannabis businesses that were not already in lawful operation. The majority's interpretation wrongfully disregards this intent and our precedent, and rewards Seven Hills for doing the same.

C.      Because Seven Hills did not establish a valid prior nonconforming use, the final notice and order to abate was proper

As Seven Hills failed to establish a valid prior nonconforming use, I would hold the County properly issued the March 2017 notice and order to abate on the production and processing of marijuana, the use of unpermitted grow structures and propane tanks, and the maintaining of a public nuisance. Seven Hills was not entitled to any exemption from the County's lawful enforcement of its local zoning and building regulations.

CONCLUSION

Despite the complicated picture presented by the majority, this case is quite simple. Seven Hills claims that it started its cannabis production business in Chelan County before the County permanently banned such businesses. But Seven Hills did not site its cannabis production business in the County until after the

15

*Seven Hills, LLC et al. v. Chelan County*, No. 98730-1
(Yu, J., dissenting)

moratorium explicitly prohibited it from doing so.  Therefore, the County properly

ordered Seven Hills to cease its unlawful operations.

I would hold that the Chelan County hearing examiner, the superior court,

and the Court of Appeals all correctly determined Seven Hills did not establish a

valid prior nonconforming use before the September 2015 moratorium.  Thus, I

respectfully dissent.

_____
Yu, J.

_____
González, C.J.

_____
Johnson, J.

_____
Montoya-Lewis, J.